(975 P.2d 1235)

No. 79,539

JAMES W. BUCHANAN and SARA B. PORRITT, *Appellants,* v. HARLEY REDIGER, MARIJEAN BISHELL, RALPH REDIGER, and LINDA MANNING, *Appellees.*

Opinion filed April 2, 1999.

*Charles N. Henson,* of Wright, Henson, Somers, Sebelius, Clark & Baker, LLP, of Topeka, for appellants.

*Richard E. Dietz,* of Dietz & Hardman, of Osborne, and *Tona Trollinger,* of Leawood, for appellees.

Before MARQUARDT, P.J., KNUDSON, J., and DAVID W. KENNEDY, District Judge, assigned.

MARQUARDT, J.: This appeal involves a dispute over ownership of 157 acres of real property in Smith County, Kansas. James W. Buchanan and Sara B. Porritt (plaintiffs) appeal from the district court order finding that Harley Rediger, Marijean Bishell, Ralph Rediger, and Linda Manning (defendants) were tenants in common with plaintiffs and that plaintiffs had not obtained title by adverse possession.

Helen Buchanan's mother, Minnie Weddle, owned the property. Helen became the owner after her mother died. Helen's husband, James H. Buchanan managed the property, terraced it, and contracted with Don Windscheffel to farm it. Upon James' death in 1977, plaintiffs rented the land under a customary crop share arrangement to Roger Fricker.

By deed in March 1968, Helen granted James H. a life estate with the remainder to plaintiffs as tenants in common. The deed was recorded on May 1, 1968, with the Smith County Register of Deeds. Helen died on August 21, 1968.

In 1969, James married Harriet Noret. James H. died in June 1977, survived by plaintiffs and Harriet. Harriet died in November 1988, leaving her nieces and nephews (defendants) as sole heirs. Defendants are Illinois residents. Plaintiffs are Colorado residents.

After James' death, the proceeds from the crops were divided equally between plaintiffs. Since 1977, plaintiffs have paid all the taxes and made improvements on the property. From 1968 until 1988, the tax rolls showed James with a life estate, and from 1988 to the present, the tax rolls showed the plaintiffs as the owners.

Plaintiffs believed that they owned the property after James' death. Prior to June 1996, no other persons, including defendants, claimed any interest in or to the property.

While trying to obtain title insurance in 1996, plaintiffs discovered a 1955 deed conveying the property to Helen and James as tenants in common. Defendants contend that based upon the 1955 deed, James died owning a one-half interest. They assert that upon James' death, one-half of his interest passed to Harriet, and one-half to plaintiffs, so that upon Harriet's death in 1988, defendants became owners of a one-fourth interest in the property.

On July 30, 1996, plaintiffs filed a quiet title action. Defendants answered and counterclaimed that they owned a one-fourth total interest in the property. Defendants requested partition of the property and an accounting for the rents and profits.

On October 16, 1996, plaintiffs filed a motion for summary judgment. In their response filed on November 15, 1996, defendants agreed with plaintiffs' statement of uncontroverted facts; however, they also filed a motion for summary judgment.

On May 15, 1997, the district court entered a memorandum decision, ruling that plaintiffs were cotenants with defendants and that a cotenant could not acquire title by adverse possession absent a clear ouster. The district court also ruled that absent knowledge of the cotenancy, plaintiffs' possession could not be adverse.

On July 14, 1997, the district court signed a journal entry denying plaintiffs' motion for summary judgment and granting defendants' motion for summary judgment. Plaintiffs filed a timely notice of appeal. On appeal, plaintiffs argue that they "have been in open, exclusive and continuous possession of the subject real property under a good faith and reasonable belief of ownership for a period in excess of 15 years" and are entitled to quiet their title against defendants.

On appeal, defendants assert that they own a one-quarter interest in the property because the cause of action for adverse possession had not yet accrued. They allege that under K.S.A. 59-505, a spouse (Harriet) cannot be denied an interest in the real property, that one cotenant of real property cannot possess real property adversely to another cotenant, and that plaintiffs' possession was

not "on a good faith, justifiable belief." Defendants argue that plaintiffs cannot assert adverse possession to deprive Harriet of her spousal entitlement under K.S.A. 59-505. Defendants cite no authority for this argument and never made this argument before the district court. Generally, a new legal theory cannot be asserted for the first time on appeal. *Jarboe v. Board of Sedgwick County Comm'rs*, 262 Kan. 615, 622, 938 P.2d 1293 (1997).

In addition, K.S.A. 59-505 does not prohibit the application of the doctrine of adverse possession. While it requires a spouse's consent for the transfer of real estate, the doctrine of adverse possession provides that "the true owner of property, who fails to protect rights of ownership against one holding in adverse possession and manifesting the same as required by statute and for the length of time fixed thereby, is considered as having acquiesced in the transfer of ownership." 3 Am. Jur. 2d, Adverse Possession § 4, p. 96. Therefore, plaintiffs may assert ownership through adverse possession.

K.S.A. 60-503 provides: "No action shall be maintained against any person for the recovery of real property who has been in open, exclusive and continuous possession of such real property, either under a claim knowingly adverse or under a belief of ownership, for a period of fifteen (15) years."

As a general rule, whether title is acquired by adverse possession is a question of fact to be determined by the trier of fact. *Barrett v. Ninnescah Bow Hunters Ass'n*, 15 Kan. App. 2d 241, 246, 806 P.2d 485, *rev. denied* 248 Kan. 994 (1991). In this case, however, the parties stipulated to the facts. Therefore, this court has a de novo standard of review of the documents and stipulated facts. *Lightner v. Centennial Life Ins. Co.*, 242 Kan. 29, Syl. ¶ 1, 744 P.2d 840 (1987); see *Heiman v. Parrish*, 262 Kan. 926, 927, 942 P.2d 631 (1997) and *Mark Twain Kansas City Bank v. Kroh Bros. Dev. Co.*, 250 Kan. 754, 762, 863 P.2d 355 (1992).

The district court found that plaintiffs had been in open and exclusive possession of the property from their father's death in 1977 until suit was filed in 1996. On appeal, plaintiffs assert that they possessed the property for the 15-year period required by K.S.A. 60-503. Defendants argue that the statute of limitations did

not begin until defendants obtained their interest when Harriet Noret Buchanan died in 1988.

In addition, defendants claim that plaintiffs had to live on the property in order to claim possession. Actions necessary to constitute adverse possession " 'are relative to the type and nature of the property and surrounding circumstances, taking into consideration the particular land, its condition, character, locality, and appropriate use.' " *Schaake v. McGrew, et al.*, 211 Kan. 842, 846, 508 P.2d 930 (1973) (evidence that claimants farmed and cut timber on the land established adequate possession). The acts of dominion necessary to establish possession must be adapted depending on the particular land, and neither cultivation, nor residence, is necessary to establish actual possession. *Manville v. Gronniger*, 182 Kan. 572, 578, 322 P.2d 789 (1958).

The stipulated fact was: "Since the death of James H. Buchanan, they (plaintiffs) have remained in open, exclusive and continual possession of such real estate under such belief of ownership. . . . None of the defendants have ever intimated that they believed they had a claim or interest in the subject land, nor have they seen, inquired about or visited the land." Throughout the history of this property, it was used exclusively for cultivation. There is no evidence of a residence on the property. Based on the fact that after 1977, plaintiffs arranged the leases, paid for improvements such as terracing and soil conservation, received all of the landlord's share of crops and farm program payments, and paid all the property tax assessments, possession clearly was established. *Cf. Farmers State Bank v. Lanning*, 162 Kan. 95, 174 P.2d 69 (1946) (similar actions were sufficient to establish possession by the bank).

For these reasons, defendants' arguments that plaintiffs did not adequately possess the property because they lived out of state is without merit.

Defendants also assert that if plaintiffs possessed the property, they did not possess it for the 15-year period required by K.S.A. 60-503. Defendants do not cite to the record to show they raised this argument to the district court. Further, they never claimed in their response to plaintiffs' motion for summary judgment that the

15-year period had not been met. Lastly, this argument was not made during oral arguments on the motion. Defendants' argument on this issue lacks merit. The doctrine of adverse possession permits the "tacking" of possession to establish the requisite time period. The general rule is that once the statute of limitations for adverse possession begins to run against the rightful owner of real property, the time continues even if the rightful owner dies or otherwise transfers the property. 3 Am. Jur. 2d, Adverse Possession § 195, p. 277. See *Armstrong v. Cities Service Gas Co.*, 210 Kan. 298, 306, 502 P.2d 672 (1972).

The plaintiffs took possession of this property in 1977 under warranty deed from their mother at the time of James' death. Their possession commenced during their stepmother's lifetime, and therefore, the statute began to run and continued to run after Harriet died and defendants acquired their interest.

In rejecting plaintiffs' claim to title, the district court exclusively relied on a determination that as cotenants, plaintiffs could not hold the property adverse to the defendants, absent a clear ouster. Plaintiffs contend that the district court erroneously applied the law to the undisputed facts.

The district court appeared to rely primarily on *Kneller v. Federal Land Bank of Wichita*, 247 Kan. 399, 799 P.2d 485 (1990). *Kneller* involved a dispute between the rights of cotenants regarding royalty payments associated with a mineral lease. Defendant Federal Land Bank had conveyed the real estate in 1944 to the plaintiffs' predecessor but reserved an undivided one-half interest in the mineral rights for 20 years and thereafter, as long as oil, gas, and/or other minerals were produced from the property. A dispute arose in 1986 as to whether the Federal Land Bank was entitled to continuing royalties based on its reservation. 247 Kan. at 400-04. Our Supreme Court rejected the Federal Land Bank's claim of adverse possession, noting that the defendant had not held the disputed rights for the 15-year period, and found that as a cotenant in the mineral rights, the defendant could not claim title by adverse possession absent " 'an ouster of which the cotenant has notice.' " 247 Kan. at 405.

The general common law rule of adverse possession is that a cotenant cannot claim full title against other cotenants absent an ouster because a cotenant's possession would not be adverse. This rule is based on the principle that a cotenant may safely assume, absent an ouster or other notice, that possession of property by one cotenant is not adverse. 3 Am. Jur. 2d, Adverse Possession § 224, p. 305-06.

The district court also relied on *Farmers State Bank v. Lanning*, 162 Kan. 95, when it ruled in defendants' favor. In *Lanning*, the real estate in dispute had originally been owned by the McGinnises. After several transfers, the property was conveyed to George Hanna and Mrs. McGinnis as tenants in common. Thereafter, they conveyed the entire tract to Farmers State Bank by warranty deed, and the deed was recorded in 1929. The bank took immediate possession of the property and remained in possession of it, through its tenants, continuously thereafter. The bank collected rent from the tenants, made improvements to the land, and paid the real estate taxes.

In 1944, the bank filed an action against the heirs of Mrs. McGinnis (who died in 1933), claiming title through adverse possession. The McGinnis heirs admitted that the inventory of Mrs. McGinnis' estate had not included the property and that they had forgotten about the real estate. The trial court ruled in favor of the bank, and the McGinnis heirs appealed. The heirs argued that one tenant in common cannot obtain property through adverse possession against his cotenants until there has been an open repudiation of the cotenancy. The Supreme Court acknowledged the general rule limiting a cotenant's right to obtain title through adverse possession. However, the Supreme Court affirmed the ruling in favor of the bank, noting:

"Another equally well-established legal principle is decisive of the rights of the parties in a case where—as here—a grantee of a cotenant by deed purporting to convey a full title promptly records his deed, takes possession of the real estate and thereafter seeks to quiet his title as against his grantor's cotenants. In that situation such *grantee is presumed to hold all that his deed calls for and therefore to hold adversely to the other co-owners*." [Citations omitted.] (Emphasis added.) 162 Kan. at 103.

The district court's reliance on *Lanning* to support its ruling in favor of defendants is confusing. *Lanning* recognizes an exception to the general rule that cotenants cannot claim title through adverse possession. Although courts are not consistent on this issue, most courts recognize that when a cotenant conveys the property to another by an instrument purporting to pass the entire title followed by the grantee's actual, open and exclusive possession of the property, these acts amount to an ouster of any other cotenants. 3 Am Jur. 2d, Adverse Possession § 236, p. 323.

*Lanning* was not the first Kansas case to find that a cotenant held the property adverse to unknown cotenants. See *Vonfeldt v. Schneidewind*, 109 Kan. 265, 198 Pac. 958 (1921). See also *Sparks v. Bodensick*, 72 Kan. 5, 82 Pac. 463 (1905) (recognizing the possibility that a cotenant who is granted what appears to be the entire interest in property may hold it adverse to undisclosed cotenants). These cases are consistent with K.S.A. 60-503, which allows adverse possession based upon a good faith belief of ownership of the disputed property.

Based upon the stipulated facts, the district court erred in granting summary judgment in favor of defendants. Plaintiffs received a warranty deed from their mother in 1968 which granted a life estate to their father with the remainder to them. The deed, on its face, indicated that Helen owned the entirety of the property and was conveying all interest to them. After James' death in 1977, plaintiffs managed and improved the property, and paid all taxes on it. Because they held the property based on a recorded deed granting them ownership upon their father's death, they held the property openly and adversely to the world, including unknown cotenants. The general presumption that cotenants hold the property for all cotenants is rebutted, and this requirement of K.S.A. 60-503 is met.

Accordingly, the district court's ruling should be reversed. Based upon the statute's clear language and the exception recognized in *Lanning*, *Vonfeldt*, and *Sparks*, the stipulated facts establish that plaintiffs met this requirement for adverse possession.

In a final effort to bolster the district court's ruling, defendants contend that plaintiffs did not have a good faith belief they owned

the property in question. Defendants contend that plaintiffs lacked good faith because they failed to share rents and profits with their cotenants, and plaintiffs knew that James remarried and was survived by his second wife. The former has nothing to do with whether plaintiffs believed, in good faith, they had title to the property since the parties stipulated that no one knew of the cotenancy before 1996.

The good faith belief requirement has been defined as a state of mind which is based on good faith under circumstances which justify such belief. The belief must be reasonable. *Akers v. Allaire*, 17 Kan. App. 2d 556, 558, 840 P.2d 547, *rev. denied* 252 Kan. 1091 (1992).

The Kansas Supreme Court has held that the "good faith belief" is not impeachable because of constructive notice from title records or laws. In *Armstrong v. Cities Service Gas Co.*, 210 Kan. at 311, the court recognized the " 'well established rule that constructive notice of a defect in the title is not sufficient to impeach the good faith of claimant since he is under no duty to examine the conveyance records imparting such notice.' " The court further held that the adverse possession statute presupposes a defect in the possessor's title, and the courts cannot nullify the statute by finding that title defects negate the good faith requirement. 210 Kan. at 311.

If a claimant was required to conduct a title search before the claimant could have a "good faith" belief, that provision of the statute would be rendered meaningless. If such a search disclosed a defect in the title, then the claimant certainly could not have a good faith belief in ownership. The courts will construe statutes to avoid unreasonable results. We presume that the legislature does not intend to enact meaningless legislation. *KPERS v. Reimer & Koger Assocs., Inc.*, 262 Kan. 635, 643, 941 P.2d 1321 (1997).

Finally, defendants seem to argue that this is not an action for the recovery of real property and therefore, K.S.A. 60-503 does not apply. Defendants rely on *Lanning* for this argument. This argument is without merit. In *Lanning*, the Supreme Court recognized the cause of action was one properly based on adverse possession. However, the portion of the case cited by defendants was on the issue of whether the suit was one for the recovery of

real property for purposes of G.S. 1935, 60-2903 *which would permit a jury trial* on the case. 162 Kan. at 97.

The decision of the district court is reversed, and the case is remanded for entry of judgment in favor of plaintiffs and an order granting title to plaintiffs as sole owners of the property as tenants in common.