(263 P.3d 809)
No. 104,342

IRVIN A. CRONE and CAROLYN CRONE, husband and wife, *Appellants*, v. FRED NUSS, *Appellee*, RICHARD BROCHER and MARLA BROCHER, husband and wife, *Defendants*, and MAGDALENE HOTT, *et al.*, *Appellees*.

Opinion filed September 9, 2011.

*Steven E. Johnson*, of Bauer, Pike & Johnson, Chtd., of Great Bend, for appellants.

*Donald F. Hoffman*, of Dreiling, Bieker & Hoffman LLP, of Hays, for appellees.

Before BUSER, P.J., ARNOLD-BURGER, J., and BUKATY, S.J.

ARNOLD-BURGER, J.: Irvin A. Crone and Carolyn Crone commenced an action to quiet title to 48.5 acres in Barton County (disputed land) to which Fred Nuss and Magdalene Hott (Magdalene Hott is deceased, hereinafter the Hott Trust), and others, hold the deed. The Crones claim ownership by adverse possession. The Crones appeal the trial court's determination that they did not present sufficient evidence to establish their right to title by adverse possession. Finding that the trial court did not arbitrarily disregard undisputed evidence or exhibit undue bias, passion, or prejudice in reaching its decision, we affirm. In addition, we find the trial court did not abuse its discretion in denying the Crones' posttrial motion to present additional evidence in an attempt to show that Nuss and the Hott Trust were not the actual owners of the disputed land.

## ADVERSE POSSESSION: IN GENERAL

Before we begin our discussion of this case, a brief review of the doctrine of adverse possession is in order. The legal theory of adverse possession provides that an owner of land may lose the title to the land if he or she fails to eject trespassers promptly. If the trespasser uses the land as his or her own for the length of time specified in the state's statute of limitations and satisfies any additional statutory requirements, the owner is barred from recovering possession of the land from the trespasser. In other words, by failing to protect his or her rights of ownership, a landowner acquiesces in the transfer of ownership to one who has fulfilled the requirements of the statute. See *Buchanan v. Rediger*, 26 Kan. App. 2d 59, 62, 975 P.2d 1235, *rev. denied* 267 Kan. 888 (1999). Many reasons have been propounded for this longstanding legal doctrine, including encouraging absentee owners to monitor the

land and keep it productive, as well as providing marketable title by quashing old claims inconsistent with the current record. See Stake, *The Uneasy Case for Adverse Possession*, 89 Geo. L.J. 2419 (August 2001).

In Kansas, as in most states, the requirements for a claim of adverse possession are governed by statute.

"No action shall be maintained against any person for the recovery of real property who has been in open, exclusive and continuous possession of such real property, either under a claim knowingly adverse or under a belief of ownership, for a period of fifteen (15) years. This section shall not apply to any action commenced within one (1) year after the effective date of this act." K.S.A. 60-503.

Under the statute, the trespasser may be under a good-faith belief that he or she actually owns the property or may be exerting a claim to the property that is knowingly adverse to the owner. The adverse possession statute serves as a statute of limitations, prohibiting any claim to the property unless possession adverse to the owner has continued for at least 15 years. The typical method to determine whether the trespasser obtains title to the property is through an ejectment or trespass action by the owner or through a quiet title action by the trespasser. See K.S.A. 60-1001; K.S.A. 60-1002.

In this case, the Crones filed a quiet title action against Nuss, the Hott Trust, and Richard and Marla Brocher asking the trial court to award title to the disputed land to the Crones under a theory of adverse possession. The Crones do not claim a good-faith belief that they owned the property. Instead, they argue that they have exerted a knowingly adverse claim against the property for 15 years.

With that background, we proceed to review the facts of this case.

### FACTUAL AND PROCEDURAL HISTORY

Although the parties offered conflicting evidence about the timing of events, the context of conversations that did (or did not) take place between them, and their respective uses of the disputed land, there is sufficient evidence in the record to support the following facts:

Irvin and Carolyn Crone, husband and wife, purchased approximately 60 acres of land in the fall of 1988. Their land is adjacent to 48.5 acres of land (disputed land) which has been owned by Nuss since he received the deed from his grandfather in 1968, although it is currently owned equally by both Nuss and the Hott Trust (hereinafter referred to jointly as Appellees). The Crones do not contest that they knew they did not own the disputed land.

From the closest road, the disputed land is located behind a solid group of trees and is only visible during the winter after the leaves have fallen. One can access the disputed land either on foot, by motorcycle, or with a four wheeler. The land is difficult to access. In fact, Nuss has discussed with county officials various methods to obtain better access.

The disputed land was inundated with Johnson grass, a noxious weed that grew from 3- to 10-feet tall. It is so prolific that, even if it is cut, it returns every year, sometimes twice, to the same height. Nuss had burned it off the property on occasion.

When they first purchased their land in 1988, the Crones immediately began cutting and baling the Johnson grass on the disputed land. Their stated purpose was to prevent the Johnson grass from spreading onto their purchased property. They used the bales of Johnson grass to bed and feed their horses. This continued until 1993. During this time, Nuss noticed some cutting of grass and baling, but it did not bother him.

Because of the thickness of the plum bushes, in 1993 the Crones started disking, or turning the soil, on the disputed land with tractors. In addition, to protect the cleared area from motorcycles and four wheelers, the Crones constructed fences to block access. They also blocked motorcycle access with round hay bales and trees. Finally, in 1993, the Crones started planting Sudan grass on the disputed land.

Also in 1993, Nuss asked David Essmiller to look at the disputed land with him and give his opinion regarding whether Nuss should farm it or if Essmiller wanted to farm it. While there, Essmiller did not see any no trespassing signs, new fencing, bales, farm equipment, or any indication of cultivation of crops. Essmiller told Nuss that he should leave the disputed land as a wildlife habitat.

During this time, both the Crones and Nuss gave people permission to hunt on the land. The person the Crones allowed to hunt on the land testified that from 1990 to 2004 he built his own deer stands and never saw any other deer stands. While on the disputed land, he believed it was apparent that somebody was farming the disputed land, and nobody ever told him that he was trespassing. Nuss gave his nephews and others permission to hunt on the land and in 2001 even went target shooting with his nephews on the land. They testified that in 2001 they did not see any farm equipment on the property and nobody told them they were trespassing. One of the nephews went back several more times over the next 7 years and was never told to leave.

Nuss drove by the disputed land about three times a week but could only see the trees. He also walked around the property annually. Nuss paid the property taxes on the disputed land and registered it every year with the Farm Service Agency (FSA) as being nonfarmable. Since 1974, Nuss leased it for oil and gas purposes.

In 1998, Nuss and his wife, Candace, visited the disputed land to see if they could build a home on it. When viewing the disputed land, Candace saw no indication of fencing designed to keep people out, no trespassing signs, equipment, or bales.

Beginning in 2003, and yearly thereafter, the Crones planted various crops, including wheat, alfalfa, and hay on the disputed land. At that point, things started to happen. The first time Nuss saw any evidence of farming was when he observed the 2003 wheat crop. In October 2003, Nuss, accompanied by an attorney and realtor, stopped Carolyn Crone on the road and asked her "if that was [their] wheat on that land over there." Nuss told Carolyn that he knew the Crones had been trespassing and cutting hay for years on the land, but he did not give them permission to plant wheat and he wanted his fair share of the crop. Carolyn told Nuss to send her documents to prove it was his. She subsequently received some documents and a deed from Nuss in 2004.

Around the same time he noticed the wheat, Nuss also noticed that an off-roading association had tied red ribbons around a lot of the trees because of some event it was sponsoring. He immediately

advised the association that he "did not favor" such activity, and the association removed the ribbons.

In 2005, Nuss put up "no trespassing" signs on the disputed land. The same year he granted permission for a 3D seismic survey to be conducted on the disputed land and for the Department of Health and Environment to access the stream around the property to take samples. Finally, in April 2005, Nuss sent the Crones a certified personal letter requesting that they no longer trespass on the land. Four months later he had his attorney send the Crones a letter requesting that they stop trespassing on his land by planting wheat.

In 2003, 2006, and 2009, the Crones entered into an oil and gas lease for their purchased land and included the disputed land at no extra cost. In 2008, after the current lawsuit was filed, the Crones tried to register the disputed land with the FSA and were told that they did not own it. The Crones never paid taxes on the disputed land.

In October 2006, the Crones sued the Appellees and the Brochers (identified as adjacent property owners) to quiet title to the disputed land under the theory of adverse possession by "open, notorious, quiet, peaceable, exclusive, possession" for more than 15 years.

The Crones acknowledged that the Brochers did not claim an interest in the disputed land. Appellees filed an answer on November 22, 2006, claiming ownership of the disputed land. The case proceeded to a bench trial in November 2009.

Following trial, the trial court denied the Crones' quiet title claim. After considering the evidence, conflicting testimony, and the nature of the disputed land, the trial court, in a detailed 10-page memorandum decision, found: (1) The Crones started doing some type of work in 1988 on land they knowingly did not own, and this initial period of cutting the Johnson grass did not amount to possession, only trespass; (2) the Crones seemed intent to take continuous possession of the disputed land when they began disking the land in either 1991 or 1993; (3) Nuss, the legal titled owner, clearly became aware that someone was cultivating the disputed land in 2003, and he notified the Crones that they did not own it

and to stop trespassing; (4) the Crones continued to claim ownership and cultivate the disputed land despite knowing that there was a challenge to their adverse claim; (5) the period of continuous adverse possession from 1991 through 2003 was only 12 years, not the statutorily required 15 years; and (6) the Crones did not exclusively possess the disputed land because both parties were jointly using it, and Nuss paid the yearly taxes and had signed-up or had it listed for a farm program. ˙

The Crones appeal. Additional facts will be presented as necessary.

### THE CRONES' QUIET TITLE ACTION

In an action to quiet title under K.S.A. 60-1002, title by adverse possession is sufficient to sustain a judgment for plaintiff. *Freeman v. Funk,* 85 Kan. 473, 117 P. 1024 (1911). The plaintiff has the burden of establishing his or her title. *Ford v. Willits,* 9 Kan. App. 2d 735, 745, 688 P.2d 1230 (1984), *aff'd* 237 Kan. 13, 697 P.2d 834 (1985). The plaintiff must rely on the strength of his or her own title and not the weakness of his or her adversary's title. *Beams v. Werth,* 200 Kan. 532, Syl. ¶ 4, 438 P.2d 957 (1968).

The Crones claim title through adverse possession. Whether title is acquired by adverse possession is a question of fact. *Stith v. Williams,* 227 Kan. 32, 36, 605 P.2d 86 (1980). " '[E]very presumption is in favor of the holder of the legal title and none is against him. The law will not allow the property of one person to be taken by another upon slight presumptions or probabilities.' " 227 Kan. at 36. " 'The facts relied upon to establish adverse possession cannot be presumed, and presumptions will not be indulged in to establish a claim of title.' [Citation omitted.]" 227 Kan. at 36.

A party seeking title by adverse possession must present clear and convincing evidence of the requisite statutory elements. *Wright v. Sourk,* 45 Kan. App. 2d 860, Syl. ¶ 4, 258 P.3d 981 (2011), slip op. at 9-10, *pet. for rev.* filed May 26, 2011; see *Boese v. Crane,* 182 Kan. 777, 782, 324 P.2d 188 (1958) ("clear and positive proof"). "Clear and convincing evidence" is an intermediate standard of proof between a preponderance of the evidence and

beyond a reasonable doubt. A "preponderance of the evidence" is evidence which shows that the truth of the facts asserted is more probable than not. "Clear and convincing evidence" is evidence that shows the truth of the facts asserted is highly probable. *In re B.D.-Y.*, 286 Kan. 686, 696-97, 187 P.3d 594 (2008).

After considering the evidence, conflicting testimony, and the nature of the disputed land, the trial court found that the Crones had failed to even present a preponderance of the evidence to establish adverse possession. Finding a party did not meet its burden of proof is a negative factual finding. "Our standard of review for a negative finding of fact is that the party challenging the finding must prove arbitrary disregard of undisputed evidence or must prove some extrinsic consideration such as bias, passion, or prejudice." *Hall v. Dillon Companies, Inc.*, 286 Kan. 777, 781, 189 P.3d 508 (2008).

In addition, "[w]hen a verdict is challenged as being contrary to the evidence, an appellate court does not reweigh the evidence or pass on the credibility of the witnesses. If the evidence, when considered in the light most favorable to the prevailing party, supports the verdict, the appellate court should not intervene." *Unruh v. Purina Mills*, 289 Kan. 1185, 1195, 221 P.3d 1130 (2009).

*The Crones' open possession of the land began in 1993.*

The Crones argue that starting in 1988, when they began cutting the Johnson grass, they did all that a claimant could do to exert an adverse claim to the property. They cite to *Stark v. Stanhope*, 206 Kan. 428, 480 P.2d 72 (1971), to support their argument that their clearing of the disputed land and the cutting of hay were sufficient acts to trigger the adverse possession period in 1988. The trial court correctly determined that the facts in *Stark* are distinguishable from the facts and circumstances here. The appellants in *Stark*, in addition to cutting hay and clearing brush, believed they owned the disputed tract; moved their house, a permanent structure and visible evidence of occupancy, onto the tract; built a hen house and made other improvements, including planting trees; put up a fence and told the public they were not allowed access; and refused to permit the true owner to use the tract in any manner. Our Supreme

Court in *Stark* concluded that such evidence showed the appellants' actual possession was open and continuous and indicated they were exercising their exclusive control or rights of ownership over the tract inconsistent with the rights of anyone else. 206 Kan. at 434-35.

Here, the trial court concluded that during the initial period between 1988 and 1991 or 1993 the Crones were just trespassing for their own benefit on land they knew someone else owned to cut native grass that already grew there. Nuss testified that he observed some cutting of grass and baling on the disputed land prior to 2003 but that it did not bother him. "[A]nnual or occasional entries on unenclosed land to cut hay [are] not sufficient to warn the legal owner that the person cutting the hay did so under a claim of right or title." Annot., 48 A.L.R.3d 818, § 19, p. 869; see *Trager v. Elliott*, 106 Kan. 228, Syl. ¶¶ 2-4, 187 P. 875 (1920); *Dickinson v. Bales*, 59 Kan. 224, Syl. ¶¶ 1, 3, 52 P. 447 (1898).

It was not until the Crones began to clear or to disk the entire disputed land in 1991 or 1993 to "plant some good feed in there" that the trial court determined as being sufficient intent to take continuous possession. In other words, it was at this time the Crones' claim to the disputed land became "open." See K.S.A. 60-503.

There was conflicting testimony whether the disking began in 1991 or 1993. The trial court stated, "The first actual intent under the evidence to start attempting to cultivate [and take continuous possession of the disputed land] occurred in either 1991, if you believe the plaintiff Mrs. Crone, or 1993 if you believe the plaintiff Mr. Crone . . . ." The trial court then calculated the adverse possession period as starting in 1991. The trial court was required to base all presumptions in favor of the legal titleholder, *i.e.*, the Appellees. See *Stith*, 227 Kan. at 36. Based on the conflicting testimony and the fact that Irvin Crone did the actual disking, the trial court should have calculated the adverse possession period as starting in 1993, not 1991, although this does not change the result in this case.

Substantial evidence supports the trial court's finding that the Crones' act of disking in 1991 or 1993 in an attempt to cultivate

the land provided sufficient unequivocal notice of an open claim to the ownership of the property.

*The Crones' possession of the disputed land was not exclusive.*

The Crones next argue that Nuss' contact with the disputed land was minimal and that his witnesses testified about a different tract of land other than the disputed land. David Essmiller, Candace Nuss, and both Sean and Nick Christiansen all testified that they accompanied Nuss to the disputed land. There was no evidence that he took them to any tract other than the disputed land. Our standard of review requires us to view the evidence and any presumption in a light most favorable to Appellees, the prevailing party and holder of the legal title on this issue, and prohibits us from reweighing the evidence or assessing credibility. See *Unruh*, 289 Kan. at 1195; *Stith*, 227 Kan. at 36.

The Crones also argue that signing up the disputed land for farm programs and paying taxes is not necessary to prove adverse possession under K.S.A. 60-503. Granted, to succeed in a claim of ownership an adverse possessor is not required to pay taxes. *Graham v. Lambeth*, 22 Kan. App. 2d 805, 808, 921 P.2d 850 (1996). However, it is a proper factor to consider in determining whether a claim of ownership exists or a claim is knowingly adverse. *Renensland v. Ellenberger*, 1 Kan. App. 2d 659, 664, 574 P.2d 217 (1977).

Here, the trial court considered evidence of Nuss' payment of taxes and enrollment of the disputed land for farm programs as evidence that Nuss owned and used the disputed land, not as the sole factor in determining there was not exclusive possession. The evidence also indicated that Nuss visited the disputed land in the 1990's with Essmiller and took his advice not to farm the disputed land and to let it remain a wildlife sanctuary. The trial court noted that both parties were jointly using the disputed land with family or friends for hunting. Any contact by Nuss and those he gave permission to be on the disputed land must be taken in context with the type and nature of the property. Actions necessary to constitute adverse possession " ' "are relative to the type and nature of the property and surrounding circumstances, taking into consid-

eration the particular land, its condition, character, locality, and appropriate use." ' [Citation omitted.]" *Buchanan*, 26 Kan. App. 2d at 63. The disputed land is secluded, supports abundant wildlife, lacks road access, and is normally not capable of being farmed. In addition, there is no indication from the trial court's findings that the Crones' possession amounted to an ouster of Nuss or that the Crones excluded Nuss in any manner.

K.S.A. 60-503 requires that the adverse holder's possession of the property be exclusive. "[T]he requisite of exclusive possession for acquisition of title by adverse possession is not satisfied if occupancy is shared by the owner or with agents or tenants of the owner." 3 Am. Jur. 2d, Adverse Possession § 71, p. 146. There is substantial evidence in the record to support the trial court's finding that the Crones' possession was not exclusive.

*The Crones' possession was not continuous for 15 years*

The Crones' final argument raises the following question: What type of overt action must an owner take against an adverse holder to protect the right of ownership and toll the 15-year statute of limitations under K.S.A. 60-503? The interpretation of a statute is a question of law over which this court has unlimited review. *Unruh*, 289 Kan. at 1193.

The trial court tolled the required 15-year period at the 12-year mark in 2003 when Nuss orally notified the Crones that he owned the disputed land and that they were not to be there. The Crones argue that Nuss was required to file a legal action in order to toll the running of the statute of limitations. Kansas courts have not addressed this specific question, and the Crones cite no authority for their argument other than K.S.A. 60-503.

In general, "[t]he true owner can successfully interrupt the claimant's unwarranted (but otherwise continuous) adverse possession either by obtaining judgment against the claimant or by entering the disputed property in an open manner with intent to take and hold possession effectively, excluding the possessor." 16 Powell on Real Property § 91.07[2], p. 91-44 (2011). A true owner's entry will toll the statute of limitations if his or her acts of dominion are such that they put a reasonably prudent person on notice that

the true owner's purpose is to resume possession of the land and that such person actually has been ousted. 3 Am. Jur. 2d, Adverse Possession § 107, p. 174.

Therefore, a true owner of property is not solely limited to legal action to toll the statute of limitations under K.S.A. 60-503. In 2003, Nuss orally notified the Crones that they were trespassing. An oral protest by an owner against occupancy of his or her land by an adverse holder, without actual entry or other overt action, is without effect because the owner is still disseised. 3 Am. Jur. 2d, Adverse Possession § 106, p. 173. Accordingly, Nuss' oral notification in 2003 was an insufficient overt act to toll the statute of limitations. In 2005, both Nuss and his lawyer each sent the Crones a certified letter notifying them that they were trespassing, and Nuss placed "no trespassing" signs on the disputed land. These overt acts by Nuss exhibited a specific declaration of purpose to protect his rights of ownership against the Crones and were sufficient to put the Crones on notice and toll the statute of limitations under K.S.A. 60-503 at 12 years (1993-2005). Even if the trial court's decision to start the adverse possession as early as 1991 was correct, the tolling in 2005 still resulted in the continuous possession ending in less than 15 years.

The Crones assert that the relevant date for tolling the statute of limitations is when they filed their action in October 2006.

"In a suit to quiet title by one in possession of real property under an adverse claim, an answer by the defendant disputing the plaintiff's title will suspend the plaintiff's possession from the date of the answer, provided the answer is successfully prosecuted in action." 3 Am. Jur. 2d, Adverse Possession § 109, p. 176. Thus, even presuming that the Crones are correct that Nuss' only option was to file a legal action, their argument would fail in this instance. Having already determined that the presumptive adverse possession period should have begun in 1993, not 1991, the Crones must have asserted continuous possession until 2008. Appellees filed their answer to the Crones' petition to quiet title on November 22, 2006, and the trial court ruled in their favor. Even though we have already found that Nuss' certified letter to the Crones was sufficient to toll the statute, if we looked at only the legal proceedings,

Nuss still tolled the statute of limitations under K.S.A. 60-503 at 13 years (1993-2006).

In summary, in order to establish a claim of adverse possession under K.S.A. 60-503, the claimant's possession must be open, exclusive, *and* continuous for 15 years. The findings by the trial court that none of these requirements were met by the Crones by even a preponderance of the evidence are supported in the record. The Crones have failed to prove the trial court arbitrarily disregarded undisputed evidence, and the Crones do not present any evidence that the trial court exhibited bias, passion, or prejudice. See *Hall*, 286 Kan. at 781.

### THE CRONES' MOTION FOR RECONSIDERATION

Two weeks after the trial court entered its memorandum decision, the Crones filed a motion for reconsideration and clarification. They cite no statutory authority for the motion. During the motion hearing, the Crones argued that the trial court incorrectly calculated the 15-year time frame under K.S.A. 60-503 and that the actions of Nuss did not rise to cooccupation of the disputed land. The trial court denied their first two arguments, and given our findings above, we will not revisit that portion of the motion.

However, the Crones also requested that the trial court provide

"a ruling and a clarification regarding the ownership of the ground in question. This point of clarification is necessary as it is possible that the ground was owned by Marla Brocher. . . . [S]ince the court found that adverse possession did not exist against the Defendants, Fred Nuss and the Magdalene Hott Trust, the ownership of the property then becomes relevant if it was owned by Marla Brocher, a defendant named, served and who has defaulted out. Since it is the decision of the court that no adverse possession occurred against Fred Nuss and the Magdalene Hott Trust, it would only apply to the property owned by Fred Nuss and the Magdalene Hott Trust."

In other words, the Crones were asking the court to clarify that its decision only applied with regards to land owned by Appellees. They wanted a reaffirmation that they had received a default judgment against the Brochers, whom they had recently come to believe were the actual owners of the land the Crones were possessing. The Crones proffered additional exhibits of prior patent titles and maps not introduced at trial to support their claim. Although

it is extremely difficult to understand the argument the Crones made before the trial court without knowing where they are pointing on various maps, it appears that they were contending that due to reliance on the river channel as it existed in 1871 and reflected on an old patent from 1927, the 1938 patent relied on by all the parties to indicate ownership of the land by Appellees, did not convey the piece of property possessed by the Crones. However, the Crones admitted that the 1927 patent relies on a survey that is not in the record and that they were unable to locate it, even at the time of the hearing.

This allegation that Appellees did not own the property was contrary to all prior claims in this action. At the very beginning of the trial on this matter, counsel for the Crones stated:

"At first we were worried about whether or not the defendants even had title to the ground that my clients feel they have adversely possessed, and that's pretty much been eliminated. We agree that they have a deed that came from the state patent that described the land as an island lying in the Arkansas River in the appropriate section. And we don't disagree that probably we're talking about the same ground that my clients have adversely possessed."

Similar concessions were made throughout the trial. The Crones did not have the property surveyed.

The trial court took the matter under advisement following the hearing and subsequently denied the motion. The court refused to consider the additional evidence because it was not presented at trial. However the court noted that even if it did consider the evidence, it was insufficient to limit the amount of land owned by Appellees and it was unwilling to find that the Crones owned part of the tract as a result of their new postjudgment claim. In addition, the Brochers never asserted any claim of ownership over the land which was the subject of the lawsuit.

On appeal, the Crones argue that the trial court abused its discretion by not considering the additional evidence. The Crones argue that the additional evidence was sufficient to prove that the Appellees were not the legal title owners of the disputed land, and, for the first time, they argue that the Appellees did not have standing to defend this action.

To fully consider the arguments, we must first determine the legal posture of the "Motion for Reconsideration and Clarification." This task is made difficult by the fact that no statutory basis was alleged in the motion itself. On appeal, the Crones claim that it was a motion for consideration of newly discovered evidence, presumably under K.S.A. 60-259(a)*Fifth*, but again they do not cite any statutory authority.

A trial court's decision on whether to grant a motion for a new trial is subject to an abuse of discretion standard of review. *City of Mission Hills v. Sexton*, 284 Kan. 414, 429, 160 P.3d 812 (2007). Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable. If reasonable persons could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion. *In re Marriage of Bradley*, 282 Kan. 1, 7, 137 P.3d 1030 (2006). Additionally, the Crones bear the burden of showing such an abuse of discretion. See *Vorhees v. Baltazar*, 283 Kan. 389, 394, 153 P.3d 1227 (2007).

Because new trials on grounds of newly discovered evidence are not favored, such motions are viewed with caution. *State v. Trammell*, 278 Kan. 265, 283, 92 P.3d 1101 (2004). To establish the right to a new trial based upon newly discovered evidence, a party must establish: (1) that the newly proffered evidence could not have been produced at trial with reasonable diligence; *and* (2) that the newly discovered evidence is of such materiality that a reasonable probability exists that it would produce a different result upon retrial. *State v. Cook*, 281 Kan. 961, 992, 135 P.3d 1147 (2006); *Schraft v. Leis*, 236 Kan. 28, 39-40, 686 P.2d 865 (1984).

The Crones argue that they did not introduce the newly found chain of title at trial because they were unable to find it. However, there is nothing in the record to indicate that, with reasonable due diligence, they could not have found the patents and surveys prior to the verdict in the case. The Crones sued Appellees and the Brochers to quiet title on October 18, 2006. The matter went to trial on November 19, 2009, and the trial court filed its journal entry on January 22, 2010. The Crones filed their motion for reconsideration and clarification on February 3, 2010. Thus, the Crones had over 3 years to search the public records and locate

any evidence relevant to their adverse possession claim, but failed to do so.

Once they located the new patents, the Crones failed to proffer them to the court by affidavit or oral testimony of witnesses as required by K.S.A. 60-259(g), although it does not appear that the trial court required them to do so, nor did Appellees object at the hearing to the Crones' failure to do so. Regardless, the court found that the evidence previously admitted at trial showed that Appellees owned the disputed land. The court noted that even if it did consider the additional evidence it was insufficient to limit Appellees' title to the disputed land. This conclusion is supported by the trial court's finding that the Crones rely on a patent for school land, which in turn relies on a survey that is undiscoverable.

Moreover, the Crones filed their action as a quiet title suit. See K.S.A. 60-1002. "In a quiet title action, the plaintiff has burden of establishing his title. To prevail, the plaintiff must rely on the strength of his own title, and not the weakness of his adversary's title." *Ford,* 9 Kan. App. 2d at 745. On appeal the Crones are now inappropriately attacking Appellees' title. See *Ford,* 9 Kan. App. 2d at 745. The trial court ruled that the Crones failed by a preponderance of the evidence to meet their burden of proving the strength of their own title due to adverse possession.

We find that the trial court did not abuse its discretion by declining to consider the new patents and maps not presented at trial.

Finally, the Crones present a novel argument that Appellees did not have "standing to defend" this action because "[t]hey must be the legal title owners of the property or in the alternative brought their own claim of adverse possession, which they did not." Because they did not raise this issue below, it would typically be excluded from consideration on appeal. However, standing is a jurisdictional issue in Kansas, and as such it can be raised at any time. The existence of jurisdiction and standing are both questions of law over which this court's scope of review is unlimited. *Mid-Continent Specialists, Inc. v. Capital Homes,* 279 Kan. 178, 185, 106 P.3d 483 (2005).

We are unable to find any cases in Kansas involving "standing to defend" in a civil case. The Crones sued Appellees. Appellees

answered that they own the disputed property, as alleged by the Crones, and they still argue they own the disputed property. The trial court, being in the county in Kansas in which the disputed land was situated, acquired the jurisdiction to determine each party's interest. K.S.A. 60-601(b)(1); K.S.A. 60-1002. We are unable to find any lack of jurisdiction as to the subject matter or the parties, and the Crones do not cite any legal authority in support of their argument. A point raised incidentally in a brief and not argued there is deemed abandoned. *Cooke v. Gillespie*, 285 Kan. 748, 758, 176 P.3d 144 (2008). Moreover, failure to support a point with pertinent authority or show why it is sound despite a lack of supporting authority or in the face of contrary authority is akin to failing to brief the issue. *State v. Conley*, 287 Kan. 696, 703, 197 P.3d 837 (2008). Therefore, the Crones' claim regarding "lack of standing to defend" fails.

The decision of the trial court is affirmed.

Affirmed.