NOT DESIGNATED FOR PUBLICATION

No. 126,080

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

PATRICIA E. GRIFFIN,
*Appellee*,

v.

LONNIE D. WILSON and LORI A. WILSON,
*Appellants*.

MEMORANDUM OPINION

Appeal from Thomas District Court; SCOTT SHOWALTER, judge. Submitted without oral argument. Opinion filed September 27, 2024. Reversed.

*Michael J. Duenes*, of Sloan, Eisenbarth, Glassman, McEntire & Jarboe, L.L.C., of Topeka, for appellants.

*Donald F. Hoffman*, of Dreiling, Bieker & Hoffman LLP, of Hays, for appellee.

Before GREEN, P.J., GARDNER and PICKERING, JJ.

PICKERING, J.:  This case arises from a dispute over the ownership of a 0.70-acre tract of real estate in Thomas County. Lonnie D. Wilson and Lori A. Wilson are the titled owners of the disputed tract. The district court determined Patricia E. Griffin gained ownership of the disputed tract through adverse possession. The Wilsons argue on appeal that the district court erred (1) when it concluded Griffin's possession of the disputed tract was exclusive and (2) when it found Griffin had a belief in her ownership of the disputed tract. We reverse because the district court lacked substantial competent evidence that

1

Griffin and her predecessors had a good faith belief in her ownership of the disputed tract.

FACTUAL AND PROCEDURAL BACKGROUND

Griffin owns the Southwest Quarter (SW 1/4) of Section Thirty-three (33), Township Eight (8) South, Range Thirty-two (32) West of the Sixth Principal Meridian. From at least 1998, the property was owned by Grace Griffin; upon her death in 2010, the property was transferred to her son, Gary Griffin. Gary transferred it to himself and his wife, Patricia, via a quitclaim deed in 2013, as joint tenants with rights of survivorship and not as tenants in common. Gary died in 2015, leaving Patricia the sole owner. Thus, for the 15-year period preceding this lawsuit, the Griffin family owned this property. Griffin does not live on the property. She lives in Greeley, Colorado, and visits the property from time to time. The property has always been cultivated farmland.

The Wilsons own the Northwest Quarter (NW 1/4) of Section Thirty-three (33), Township Eight (8) South, Range Thirty-two (32) West of the Sixth Principal Meridian, which is located directly north of the Griffin land. Lonnie's parents, Lloyd and Bertilla Wilson, acquired the property in 1968. Lonnie and Lori acquired the property from Bertilla's estate in 2015.

The disputed tract that is the subject of this action is a 0.70-acre strip of property running the length of the boundary between the Wilson and Griffin properties. The entire disputed tract is located on Wilson land. There was an east-west fence between the Wilson and Griffin properties from at least the early 1990s to 2020 (the old fence). According to a surveyor, Brian Berlier, the old fence was about 12 feet north of the boundary line. Lonnie called Griffin in May 2019 to discuss his plan to move the old fence back to the actual boundary line and enclose the disputed tract with the rest of the Wilson land. Griffin responded later that she believed the old fence should remain in

2

place. Lonnie removed the old fence sometime in 2020, and Griffin filed this quiet title petition on July 20, 2020. Both parties filed motions for summary judgment, which the district court denied after a hearing. A bench trial was held September 20, 2022.

Lynn Goossen is a farmer who leased the Southwest Quarter from the Griffins and farmed it since about 1991. He testified that he had always farmed the Griffin land all the way to the old fence, which included the disputed tract. In the early 1990s, Lonnie and his dad told Goossen that the old fence had been moved and was not on the property line—that it should be farther south. Goossen told them to contact Grace Griffin, the owner at that time. And he did not change his farming practices. Goossen admitted that over the years there were small animals—mainly goats and sheep—that got under the fence and onto the disputed tract. The district court specifically found Goossen's testimony to be more credible than Lonnie's. The district court concluded that Goossen farmed to the fence, including the disputed tract, since the 1990s.

Lonnie testified that ever since he could remember, he knew the old fence was not on the property line. Lonnie testified that he moved cattle through the disputed tract and personally traveled it by horse or four-wheeler "hundreds of times." Lonnie added that smaller animals would go under the fence from Wilson land and graze on the disputed tract over the years, which he allowed because he believed it was his land. Lonnie admitted that his use of the disputed tract as a route to get to his parents' farmstead via horse or four-wheeler depended on what was planted there. Lonnie testified that Goossen only farmed the disputed tract after Lonnie's dad died in 2010. In his deposition testimony he said, "[I]f there was a crop there that I couldn't get through, I didn't go through." The district court concluded that Lonnie "occasionally rode his horses and four wheelers on the disputed property," and "the fence was less than substantial and wouldn't keep livestock in if they wanted out."

3

The district court found that Griffin was not actively involved in the day-to-day activities of her property, but that she believed her predecessors farmed the property to the fence line and that she did as well. The district court concluded that Griffin "believed the property line extended to the fence because that was the way [she] believed it had always been." But Griffin admitted on cross-examination that she did not know her tenant, Goossen, farmed the land to the fence, she just assumed he did. She agreed it was possible the crops were 12 feet short of the fence.

ANALYSIS

I.    *Did the District Court Lack Substantial Competent Evidence of Griffin's Exclusive Possession of the Disputed Property*?

*Standard of Review*

"Whether a party has acquired title by adverse possession is a question of fact to be determined by the trier of fact." *Ruhland v. Elliott*, 302 Kan. 405, 409, 353 P.3d 1124 (2015). We review those "factual findings to 'determine if the record shows substantial competent evidence'" to support the district court's findings. 302 Kan. at 409-10. "'Substantial competent evidence refers to legal and relevant evidence that a reasonable person could accept as being adequate to support a conclusion.'" *Pyle v. Gall*, 317 Kan. 499, 501, 531 P.3d 1189 (2023). Where applicable, "we exercise de novo review over a district court's interpretation of the adverse possession statute, K.S.A. 60-503." *Ruhland*, 302 Kan. at 410.

*Analysis*

"Adverse possession is a method whereby a person who was not the owner of property obtains a valid title to that property by the passage of time. The concept of

4

adverse possession allows a person to claim title to property presently titled in another . . . by operation of law." 3 Am. Jur. 2d, Adverse Possession § 1. Adverse possession is disfavored in terms of being established by "inference." *Boese v. Crane*, 182 Kan. 777, 782, 324 P.2d 188 (1958). "'Every presumption is in subordination to the rightful owner.'" *Ruhland*, 302 Kan. at 411 (quoting *Boese*, 182 Kan. at 782). In broad terms, "the law is quite solicitous of the rights of landowners." *Goddard v. Pfeifer*, No. 115,966, 2018 WL 386168, at *2 (Kan. App. 2018) (unpublished opinion).

K.S.A. 60-503 outlines the elements that a party claiming adverse possession must have:

(1)     open, exclusive, and continuous possession of the property;

(2)     that is either under a claim knowingly adverse or under a belief of ownership;

(3)     for a period of 15 years. *Armstrong v. Cities Service Gas Co.*, 210 Kan. 298, 307, 502 P.2d 672 (1972).

A person's use of land by permission given by the true owner cannot "ripen into adverse possession." *Ruhland*, 302 Kan. at 412.

The party claiming adverse possession carries the burden to prove his or her claim. Each element must be proven by clear and convincing evidence. *Crone v. Nuss*, 46 Kan. App. 2d 436, 442, 263 P.3d 809 (2011).

> "'Clear and convincing evidence' is an intermediate standard of proof between a preponderance of the evidence and beyond a reasonable doubt. A 'preponderance of the evidence' is evidence which shows that the truth of the facts asserted is more probable than not. 'Clear and convincing evidence' is evidence that shows the truth of the facts asserted is highly probable." *Crone*, 46 Kan. App. 2d at 442-43.

Neither party disputes that Griffin has possessed the property for 15 years in an open, continuous manner. That is, through tacking her years of ownership with the years of ownership by her mother-in-law, Grace, and her husband, Gary, she has met the 15-year requirement. See *Stith v. Williams*, 227 Kan. 32, 36, 605 P.2d 86 (1980). The Wilsons do, however, dispute that Griffin's possession has been exclusive. The parties agree Griffin proceeded under the theory she had a belief in ownership and not with a knowledge that her claim was adverse. Still, the Wilsons challenge her belief. Under the statute's evidentiary requirements, if Griffin failed to prove either that her use of the property was exclusive or that her possession was under a belief of ownership, then her claim of adverse possession must fail.

*We first consider whether Griffin had exclusive possession of the property.*

Under the "'adverse-possession doctrine, the exclusivity requirement describes the behavior of an ordinary possessor and serves to give notice to the owner.'" *Pyle*, 317 Kan. at 506 (quoting Restatement [Third] of Property [Servitudes] § 2.17, comment g [2000]). In practical terms, "[t]he adverse possessor's exclusion of all others during the prescriptive period acts as a challenge to the landowner's right to own and possess the land for all purposes allowed by what he owns." 317 Kan. at 507. As such, a "claimant's use is 'exclusive' for purposes of establishing title by adverse possession if such use excludes not only the record owner but also all third persons to the extent that the owner would have excluded them." 2 C.J.S., Adverse Possession § 56. Consequently, in a successful adverse possession case, the possessor acquires ownership of the owner's interest in the land. *Pyle*, 317 Kan. at 507.

The Wilsons assert that in order for Griffin to acquire the disputed tract, her possession must have been "to the exclusion of *all other persons*." See *Koch v. Packard*, 48 Kan. App. 2d 281, 288, 294 P.3d 338 (2012). But in *Pyle*, our Supreme Court abrogated *Koch*. 317 Kan. at 506, 508. The *Pyle* court reversed the Court of Appeals

6

panel's holding that the Pyles did not exclusively use the property because the Pyles did not exclude all others. 317 Kan. at 508. Both *Koch* and *Pyle* dealt with prescriptive easements, which, although similar, are not identical to adverse possession.

The *Pyle* court agreed that the type of exclusiveness in an adverse possession claim is not the same for a prescriptive easement: "'Adverse possession requires that the possession of the property be exclusive, while a prescriptive easement requires that the use of the land be exclusive only to the extent the nature of the use will permit.'" 317 Kan. at 505. Thus, as noted above, in an adverse possession claim, the possessor is "'challenging the true owner's right to use the property or preventing the true owner from using the land,'" which is usually accomplished by fencing or marking off the land. 317 Kan. at 507. Here, the disputed tract was enclosed with Griffin's property.

In *Stark v. Stanhope*, 206 Kan. 428, 480 P.2d 72 (1971), our Supreme Court answered for the first time whether a cemetery's use of a roadway on the disputed property prevented the adverse possession claimant from exclusive possession of the disputed property. The *Stark* court held for the adverse possession claimant, concluding that the public's use of the roadway to reach the cemetery was "casual and infrequent," and the adverse possession claimant's use was "continuous and exclusive for its primary purpose." 206 Kan. at 436. The use of the roadway was determined to be made "without any intention of asserting a right of entry and possession" to the entire tract. 206 Kan. at 436.

Adverse possession is not established where both the true owner and the claimant shared the disputed land. See *Myers v. Loechler*, No. 121,650, 2020 WL 4032835, at *9 (Kan. App. 2020) (unpublished opinion) (finding couple failed to sustain their burden of proof on the exclusivity element necessary for an adverse possession claim because the couple and the true owners shared the disputed pathway). Thus, when determining

exclusivity, the fact-finder must consider whether the true owner and possessor merely *share* the property, the antithesis of exclusivity. See K.S.A. 60-503.

For instance, in *Crone*, the Crones attempted to quiet title to land owned by Nuss and others through an adverse possession claim. The disputed land was 48.5 acres of heavily wooded rural property. Both parties used the land for various purposes. The Crones cut and baled grass, planted grass, and permitted hunters on the property. Nuss paid taxes and enrolled the property for governmental farm programs, while also giving permission to relatives to hunt there. Ultimately, when Nuss noticed that the Crones planted wheat on the disputed property, he began to assert his legal claim to ownership of the crop and the property. The *Crone* panel held there was substantial evidence to support a finding that the Crones' possession was not exclusive, especially where there was no finding "that the Crones' possession amounted to an ouster of Nuss or that the Crones excluded Nuss in any manner." 46 Kan. App. 2d at 446.

In contrast, the district court here did not find that the Wilsons and Griffin shared the disputed tract. Rather, the district court here found that the Wilsons used the disputed tract, but their use was "occasional" and not "active[]." It concluded: "The occasional animal getting out, or horseback ride through the property when the crops were not growing, is not enough on the part of [the Wilsons] to argue that [Griffin's] possession was not open[,] exclusive[,] and continuous." The court thereby specifically found that the Wilsons' use of the disputed tract was casual and infrequent.

The Wilsons concede that exclusivity is not destroyed by another's casual and infrequent use of the disputed property outside of its primary purpose but argue that their use of the property was frequent and common. Their argument asks us to reweigh the evidence, which we do not do. *In re Estate of Hjersted*, 285 Kan. 559, 570, 175 P.3d 810 (2008). In our determination of whether the district court's findings are supported by substantial competent evidence, we must view the facts supporting the district court's

findings as true, including accepting all reasonable inferences, and must disregard any evidence to the contrary. *Peterson v. Ferrell*, 302 Kan. 99, 104, 106, 349 P.3d 1269 (2015). When viewing the evidence in a light most favorable to Griffin—the prevailing party—there was substantial competent evidence that her possession of the disputed tract was exclusive. The district court correctly found that Griffin has met the first element of open, exclusive, and continuous possession of the disputed property.

II.     *Did the District Court Lack Substantial Competent Evidence of Griffin's Belief of Ownership of the Disputed Property?*

*Standard of Review*

"The question of what constitutes good faith in one claiming to hold property under a belief of ownership is a question for the trier of the fact." *Armstrong*, 210 Kan. at 311-12. We review those factual findings "to 'determine if the record shows substantial competent evidence'" to support the district court's findings. *Ruhland*, 302 Kan. at 409-10.

*Analysis*

Again, we look to K.S.A. 60-503, which outlines the three elements of an adverse possession claim: (1) open, exclusive, and continuous possession of the property; (2) that is either under a claim knowingly adverse or under a belief of ownership; and (3) for a period of 15 years. K.S.A. 60-503; *Armstrong*, 210 Kan. at 307.

*Griffin claims she holds a good faith belief of ownership.*

The parties agree that as to the second element, Griffin proceeded solely under the theory she had a belief in ownership and not on a claim knowingly adverse. A party

claiming title by adverse possession must present "'clear and convincing evidence'" of the statutory elements, meaning "evidence that 'shows the truth of the facts asserted is highly probable.'" *Ruhland*, 302 Kan. at 410.

"The good faith belief requirement has been defined as a state of mind which is based on good faith under circumstances which justify such belief. The belief must be reasonable." *Buchanan v. Rediger*, 26 Kan. App. 2d 59, 67, 975 P.2d 1235 (1999). K.S.A. 60-503 changed the common-law concept of adverse possession by replacing the element of "'hostility'" with the "'belief of ownership'" claim. *Armstrong*, 210 Kan. at 308. The belief concept has more of an element of good faith. As *Armstrong* noted:  "'The intention is not to punish one who neglects to assert his rights, but to protect those who have maintained the possession of land for the time specified by the statute under claim of right or color of title.'" 210 Kan. at 309.

In her interrogatory response, Griffin admitted that she had not been on the disputed tract a single time in the previous 15 years. To support her good-faith belief of ownership, Griffin stated that she relied on the fact that Goossen "would farm to the fence line every year."

Griffin later acknowledged that she did not know that her tenant farmed the land to the fence every year. Also, when asked if this information—that Goossen farmed the land all the way to the fence—was provided by Goossen, Griffin responded, "No, it's just what I thought was done." Counsel for the Wilsons then said, "But, you don't know that. You don't know in fact that the farming went to the fence every year. Maybe it was a foot or two short. Maybe it was ten feet short on the corners. Maybe it was 12 feet short of the fence; is that right?" And Griffin responded, "I guess, it's a possibility."

Griffin admitted that she did not actually know the land was farmed to the fence every year. In her deposition, Griffin agreed she did not know if Goossen planted north of the boundary line or how far because she was not there and she did not inspect it.

Here, the district court ruling on this element was limited to the following: "[Griffin] believed the property line extended to the fence because that was the way [Griffin] believed it had always been. [Griffin] believed that her husband and his mother had the property farmed to the fence line, so she naturally did as well." The district court did not point to any evidentiary circumstances to justify that belief.

In *Wallace v. Magie*, 214 Kan. 481, 522 P.2d 989 (1974), our Supreme Court considered the existence of good-faith belief of ownership in an adverse possession case. There, the only question was whether the claimants, the Magies, held the property under a good-faith belief of ownership since the parties stipulated that the Magies' possession of the property was open, continuous, and exclusive. The *Wallace* court considered how the Magies purchased the property, how they made improvements to the property, looked to the circumstantial evidence that the claimant sold the house located on the real estate, granted a real estate mortgage on the premises, granted oil and gas leases on the premises, and made improvements on the property. 214 Kan. at 487. While those activities are not a prerequisite to the establishment of a claim of adverse possession, they do represent common acts of ownership.

In *Shelton v. Chacko*, No. 123,092, 2022 WL 67881 (Kan. App. 2022) (unpublished opinion), another panel of this court reviewed whether an adverse possession claimant adversely possessed a disputed tract under a good-faith belief of ownership. There, neighbors disputed the location of a boundary line where a fence was not on the true boundary. Chacko testified that he farmed the property up to the fence line, and his ranch hand confirmed it. The panel concluded that "Chacko's farming practices provided some evidence of his belief" of ownership. 2022 WL 67881, at *6.

11

Unlike in *Wallace* and *Shelton*, here the only act of ownership was based on Griffin's presumption that her tenant farmed to the fence. Griffin was not the one doing the farming. She had not been on the property in the 15 years spanning the adverse possession claim, so she was unable to point to any common acts of ownership. Moreover, her belief of ownership was based on a presumption. Our courts have continually held that an adverse possession claim may not be established "through inference." *Ruhland*, 302 Kan. at 410; see *Boese*, 182 Kan. at 782.

*Griffin provided no evidence of her predecessors' belief in ownership.*

When a claimant has not possessed the land for the requisite 15 years, the claimant must tack on to the possession of the prior predecessors in title. See *Stith*, 227 Kan. at 36. There is "no statutory or caselaw authority that an owner's belief or 'state of mind' is a theoretical inquiry. In other words, the prior owner[s] must actually, in good faith, believe [they own] the subject property." *Stewart v. Rader*, No. 121,519, 2020 WL 4379049, at *5 (Kan. App. 2020) (unpublished opinion); see also *Goddard*, 2018 WL 386168, at *1-2 (to meet 15-year requirement, couple had to "tack or rely on the time" of prior owner's belief of ownership to establish adverse possession claim).

During the 15-year period here, the property was initially owned by Grace Griffin; upon her 2010 death, the property was transferred to her son, Gary. Gary and Patricia became joint tenants with rights of survivorship in 2013. Griffin became the sole owner when Gary died in 2015. Thus, to prove that she had been in possession of the property for 15 years, Griffin had to rely on tacking her possession with Grace's and Gary's prior possession of the property. Therefore, Griffin also had to prove Gary's and Grace's beliefs in ownership of the disputed tract. The sole evidence here to support that belief was Goossen's testimony that he farmed to the fence every year. There was no evidence that Gary or Grace *knew* that Goossen was planting to the fence every year. And Griffin did not know it.

12

The Wilsons point to other states' caselaw for support. They cite to *Kerlin v. Tensaw Land & Timber Company, Inc.*, 390 So. 2d 616, 620 (Ala. 1980), which stated that an adverse possessor "may possess through acts of a tenant to land he had actually leased to the tenant, as well as alter his boundary line by the possession of his tenant. [Citations omitted.]" Another cited case, *Swygert v. Roberts*, 136 Ga. App. 700, 700, 222 S.E.2d 75 (1975), held that a tenant's use of a road, openly and continuously, in excess of the requisite number of years, allowed his landlord's successor in title to obtain a prescriptive easement by adverse possession. We find neither case persuasive as neither *Kerlin* nor *Swygert* discussed good-faith beliefs of ownership or support the Wilsons' argument.

Moreover, as the Wilsons assert, even if Goossen farmed to the fence, as he testified, the question remains whether those actions were known by Griffin and her predecessors in title. Griffin cannot establish a good-faith belief that she owns the disputed tract by claiming that her tenant farms it, when she was unsure of that fact.

Without reweighing any evidence, we conclude that the district court did not hold Griffin to the required standard of proof to establish the required good-faith belief that she and her predecessors possessed the property. The court's finding lacked substantial competent evidence that Griffin had a belief in ownership that was held both in good faith and reasonable under the circumstances. Under our standard of review, we reverse the district court's judgment granting Griffin's adverse possession claim.

Reversed.