No. 111,066

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

MFA ENTERPRISES, INC.,
*Appellee*,

v.

DONALD DELANGE,
*Appellant*.

SYLLABUS BY THE COURT

1.

Motions for directed verdict have been replaced by motions for judgment as a matter of law in jury trials and by motions for judgment on partial findings in nonjury trials.

2.

On appeal from the granting of a motion for judgment on partial findings, we review the record to determine if the district court's findings of fact were supported by substantial competent evidence and if judgment as a matter of law was proper.

3.

Courts may treat written agreements as being abandoned when one party acquiesces to the acts of another party that are inconsistent with the continued existence of the agreement.

4.

When a tenant holds over his or her term with the express or implied consent of the landlord the law implies a continuation of the original tenancy upon the same term and conditions.

1

5.

To gain title by adverse possession in Kansas, the claimant must have been in open, exclusive, and continuous possession of the property, either under a claim knowingly adverse to the titled owner or under a belief of ownership, for 15 years. K.S.A. 60-503.

6.

Possession of land under the terms of a lease is not hostile because the true owner is permitting the tenant to be on the property.

7.

Ultimately, whether a party has acquired land by adverse possession is a question of fact, and the party asserting acquisition must establish each element by clear and convincing evidence.

8.

When one seeks to obtain title to real property by adverse possession, there is a presumption in favor of the party holding legal title against the possessor so that mere possibilities do not deprive the legal owner of the property.

9.

An offer to purchase land is an admission that the possessor's interest is inferior to that of the true owner, indicating that the possessor is not adversely holding the property.

Appeal from Crawford District Court; A.J. WACHTER, JR., judge. Opinion filed October 17, 2014. Affirmed.

*Seth A. Jones*, of Law Office of Richard L. Hines, P.A., of Erie, for appellant.

*Frederick R. Smith*, of Pittsburg, for appellee.

Before BRUNS, P.J., PIERRON and POWELL, JJ.

BRUNS, J.: This is an action involving the title to real property leased by MFA Enterprises ("MFA") to Donald Delange. MFA filed a forcible detainer petition seeking possession of the real property and damages based on Delange's default under the terms of the lease agreement. In response, Delange asserted that he adversely possessed the real property. Ultimately, the district court held a bench trial and granted judgment as a matter of law to MFA. On appeal, Delange contends that the district court procedurally erred in granting judgment in favor of MFA. Delange further contends that the district court erred in rejecting his claim of adverse possession. Because we find that Delange remained subject to the terms of the lease agreement, we affirm the district court's decision.

FACTS

The material facts in this case are undisputed. On August 12, 1976, The Missouri-Kansas-Texas Railroad Company ("MKT"), as the original lessor, and Roger Westhoff, as the original lessee, entered into an "Industrial Lease" for a small tract of land adjacent to railroad tracks in Hepler, Kansas. Westhoff used the real property to operate the Hepler Grain Company. The lease agreement required the lessee to make annual payments in advance, but it did not contain an expiration date. Rather, it provided that either party could terminate the agreement by serving 30 days' written notice on the other party.

In addition, the lease agreement provided:

> "In case Lessee shall make default in the payment of any rental as and when due by the terms of this lease, . . . Lessor *may* . . . declare this lease at an end and enter into and . . . possess said leased premises . . . and may remove therefrom Lessee and all persons occupying the same or any part thereof, using such force as may be necessary for that purpose." (Emphasis added.)

3

In 1977, Westhoff filed for bankruptcy, and Delange purchased the lease from the bankruptcy trustee. On September 19, 1977, the bankruptcy trustee assigned the lease to Delange. For several years, Delange—doing business as Hepler Grain Company—used the buildings, grain elevator, and silos located on the property for cleaning seed, mixing feed, and storing grain. In recent years, however, the grain operations have declined significantly. Delange's son—who is not a party to the lease agreement or to this action—continues to use the real property to mix feed, fix tires, and perform maintenance on vehicles.

On July 3, 1980, MKT and Delange executed a supplement to the lease agreement increasing the lease payment. The parties then amended the lease agreement again on March 30, 1983, to increase the size of the land being leased. In 1987, Union Pacific Railroad Company (Union Pacific), the successor in interest to MKT, stopped running its trains through Hepler. About that time, Delange and his son became concerned about the property description in the lease agreement.

Evidently, Delange's son told Union Pacific that his father was going to stop paying rent unless the lease was rewritten to reflect what the Delanges believed to be the correct real estate description. Delange has not paid the annual rent due under the terms of the lease agreement since January 1, 1993. Although a collection agency contacted the Delanges in an unsuccessful attempt to settle the past due rent, neither party gave the other written notice to terminate the lease.

On April 10, 1997, Union Pacific sent a representative to inquire whether the Delanges wanted to purchase the real property. At that time, Delange's son offered to pay $2,200 for the land, but they never closed the deal. Thereafter, Delange continued to possess and use the real property without paying rent.

On May 24, 2012, Union Pacific sold the real property and assigned its rights under the lease agreement to MFA. A week later, MFA sent a letter to Delange notifying him that it was terminating the lease agreement due to his failure to pay rent, and on August 6, 2012, MFA filed a petition for forcible detainer against Delange, seeking possession of the real property and damages for the past due rent. In his answer to MFA's petition, Delange asserted that he had gained title of the real property by adverse possession.

The district court held a bench trial on November 20, 2013. At the trial, the parties stipulated that the titled owner of the land subject to the lease agreement is MFA. The parties also agreed that Delange has the burden of proof to establish adverse possession. In an attempt to meet his burden, both Delange and his son testified that they continued to use the land even though they had not paid rent since 1993. Moreover, MFA called the Crawford County Treasurer, who testified that Delange had continued to pay taxes on the improvements to the land—as required by Article II, paragraph 2 of the lease agreement—while MFA's predecessors in interest continued to pay the taxes on the land.

At the conclusion of the evidence, MFA dropped its claim for damages and moved for a directed verdict on Delange's adverse possession defense. In support, MFA's attorney argued that Delange had not proven that he held the real property adversely because he had continued to possess the land under the terms of the lease even though he was not paying rent. MFA's attorney also argued that Delange was not in exclusive possession of the property because he shared it with another permissive user—his adult son—on a regular basis. In response, Delange's attorney argued that Union Pacific had abandoned the lease agreement and that his client continued to adversely possess the real property for more than 15 years.

After considering the evidence presented, the district court found that Delange had failed to meet his burden of proof that he adversely possessed the real property and that MFA was entitled to judgment as a matter of law. Specifically, the district court found that Delange remained in possession of the real property pursuant to the terms of the lease agreement and not adversely to MFA. The district court also found that Delange was a holdover tenant and, as such, could not gain title to the land by adverse possession. Thus, the district court ordered that possession of the real property be restored to MFA, and a Journal Entry was entered on December 19, 2013.

ANALYSIS

On appeal, Delange raises three issues. First, Delange contends that the district court erred in granting a directed verdict in favor of MFA. Second, Delange contends that the lease agreement between the parties did not prevent him from obtaining the real property by adverse possession. Third, Delange contends that the district court erred by failing to find that he had obtained ownership of the real property by adverse possession.

*Procedure Utilized by District Court*

The district court granted MFA's motion for directed verdict at trial. Although we recognize that it is not uncommon for attorneys and judges to continue to use the term "directed verdict," this procedural devise was eliminated by the 1997 Kansas Legislature. L. 1997, ch. 173, sec. 26. Since 1997, the analogous motion in jury trials is a motion for judgment as a matter of law pursuant to K.S.A. 2013 Supp. 60-250, and the analogous motion in nonjury trials is a motion for judgment on partial findings pursuant to K.S.A. 2013 Supp. 60-252(c). See 4 Gard and Casad Kansas C. Civ. Proc. 5th Annot. § 60-250 (2012); 4 Gard and Casad Kansas C. Civ. Proc. 5th Annot. § 60-252 (2012). Thus, because the present case involved a nonjury trial, we must determine whether the district court's judgment was appropriate under the terms of K.S.A. 2013 Supp. 60-252(c).

6

K.S.A. 2013 Supp. 60-252(c) provides:

> *"Judgment on partial findings.* If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, *the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.* The court may, however, decline to render any judgment until the close of the evidence. A judgment on partial findings must be supported by findings of fact and conclusions of law . . . ." (Emphasis added.)

In *Lyons v. Holder*, 38 Kan. App. 2d 131, 135, 163 P.3d 343 (2007), a panel of this court found that in ruling on a judgment on partial findings, "the district judge has the power to weigh and evaluate the evidence in the same manner as if he or she were adjudicating the case on the merits and making findings of fact at the conclusion of the entire case." Accordingly, we must look to see if the district court's findings were supported by substantial competent evidence. Next, we must determine whether judgment as a matter of law was proper. 38 Kan. App. 2d at 135.

*Effect of Lease Agreement*

Delange next contends that the parties abandoned the Industrial Lease thereby permitting him to adversely hold the property.

> "The abandonment or repudiation of a [written agreement] under Kansas law is placing oneself, by voluntary act, in a position so that he is unable to fulfill his part of the agreement, which may be treated as an anticipatory breach, with the result that the other party may thereupon rescind it. See *Jinnings v. Amend,* 101 Kan. 130, 165 P. 845 (1917)." *Wylie v. Marley Co.*, 891 F.2d 1463, 1471 (10th Cir. 1989).

In other words, a written agreement "ceases to be in force when it is rescinded by mutual consent, and the courts will treat a contract as abandoned when one party acquiesces to the acts of another party that are inconsistent with the continued existence of a contract." *U.S.D. No. 446 v. Sandoval*, 295 Kan. 278, Syl. ¶ 6, 286 P.3d 542 (2012).

Here, it is undisputed that the lease agreement did not contain an expiration date. Rather, either party had the right to terminate the lease by giving 30 days' written notice to the other party. But neither party chose to do so until MFA sent a written notice of termination to Delange on May 31, 2012. As indicated above, Article II, paragraph 2 of the lease required that Delange pay taxes on the land's improvements, which he dutifully did. So he cannot claim that the parties abandoned the lease when he continued to—at least in part—perform the contract.

Although Delange failed to pay rent after January 1, 1993, neither MFA nor its predecessors were required to terminate the lease agreement. Instead, the lease's plain language simply gave MFA and its predecessors the option to terminate the lease upon default of payment. Moreover, possession of land pursuant to a lease is, by its definition, not hostile because the true owner is permitting the lessee to be on the property. *Federal Savings & Loan Ins. Corp. v. Urschel*, 159 Kan. 674, 679, 157 P.2d 805 (1945).

Even if the lease agreement had terminated, "[t]he general rule is that when a tenant holds over his term with the consent of the landlord, express or implied, the law implies a continuation of the original tenancy upon the same term and conditions." *Becker v. McFadden*, 221 Kan. 552, 555, 561 P.2d 416 (1977); see *Thomas v. Dudrey*, 208 Kan. 684, 494 P.2d 1039 (1972). Accordingly, we find that Delange remained subject to the terms of the lease either because the lease continued in existence until MFA gave 30 days' written notice or because Delange was a holdover tenant.

8

*Adverse Possession*

Under Kansas law, adverse possession is governed by K.S.A. 60-503, which provides:

> "No action shall be maintained against any person for the recovery of real property who has been in open, exclusive and continuous possession of such real property, either under a claim knowingly adverse or under a belief of ownership, for a period of fifteen (15) years."

The legal theory of adverse possession encourages land owners to promptly eject trespassers. "[B]y failing to protect his or her rights of ownership, a landowner acquiesces in the transfer of ownership." *Crone v. Nuss*, 46 Kan. App. 2d 436, 437, 263 P.3d 809 (2011). The Kansas statute differs from common law to the extent that a claimant can establish adverse possession by a good-faith belief of ownership rather than only by hostile possession. See *Crone*, 46 Kan. App. 2d at 438. In this case, however, Delange only asserts that his possession of the land was knowingly adverse to MFA.

Ultimately, whether a party has acquired land by adverse possession is a question of fact, and the party asserting title must establish each element by clear and convincing evidence. See *Wright v. Sourk*, 45 Kan. App. 2d 860, 866, 258 P.3d 981 (2011). Here, after hearing the evidence presented at the bench trial, the district court concluded that Delange had failed to meet his burden of proof. A finding that a party did not satisfy its burden of proof is a negative factual finding. See *Hall v. Dillon Companies, Inc.*, 286 Kan. 777, 781, 189 P.3d 508 (2008).

In reviewing negative findings, we must determine whether the district court arbitrarily disregarded undisputed evidence or relied upon an extrinsic consideration— such as bias, passion, or prejudice—in reaching its decision. See *Hamel v. Hamel*, 296 Kan. 1060, 1078, 299 P.3d 278 (2013). In addition, when one seeks to obtain title to real

9

property by adverse possession, there is a presumption in favor of the party holding legal title against the claimant so that mere possibilities do not deprive the legal owner of the property. See *Stith v. Williams*, 227 Kan. 32, 36, 605 P.2d 86 (1980). Absent proof that the district court disregarded undisputed evidence or based its decision on an improper consideration, we will not disturb a holding that a party failed to satisfy its evidentiary burden. See *J.A. Tobin Construction Co. v. Williams*, 46 Kan. App. 2d 593, 597, 263 P.3d 835 (2011).

As indicated in the previous section, Delange remained subject to the terms of the lease agreement either on its face or as a holdover tenant. As such, Delange was not a trespasser, and his possession was not adverse. In fact, Delange admits that in 1997, his son offered a Union Pacific representative—the predecessor to MFA—$2,200 to purchase the land. Several courts have held that such an offer to purchase land is an admission that the possessor's interest is inferior to that of the true owner, so the possessor is not adversely holding the property. See *Kerlin v. Tensaw Land & Timber Co.*, 390 So. 2d 616, 619 (Ala. 1980); *Combs v. DuBois*, 135 Ariz. 465, 469, 662 P.2d 140 (1982); *Bowen v. Serksnas,* 121 Conn. App. 503, 511-12, 997 A.2d 573 (2010); *Cahill v. Morrow*, 11 A.3d 82, 91 (R.I. 2011).

Based on our review of the record, we find that there is sufficient evidence to support the district court's conclusion that Delange failed to meet his burden to establish adverse possession by clear and convincing evidence. We find that there is substantial evidence that Delange was not a trespasser and that neither party terminated the lease until 2012. In the alternative, we find that there is substantial evidence that even if the lease agreement had expired, Delange would have remained subject to its terms as a holdover tenant. Moreover, we find that there is nothing in the record that shows the district court's decision was based on bias, passion, prejudice, or any other extrinsic consideration.

Affirmed.

10