NOT DESIGNATED FOR PUBLICATION

No. 120,455

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

HOWARD L. PEACOCK, GAYLA S. MOECKEL and
GAYLA S. MOECKEL, Trustee of the GAYLA S. MOECKEL TRUST,
*Appellants*,

v.

TODD E. SMILEY and MARCELLA MOECKEL SMILEY,
*Appellees*.

MEMORANDUM OPINION

Appeal from Reno District Court; TIMOTHY J. CHAMBERS, judge. Opinion filed February 21, 2020. Affirmed in part, reversed in part, and remanded with directions.

*Lee Thompson*, of Thompson Law Firm, LLC, of Wichita, for appellants.

*Robert J. Vincze*, of Law Offices of Robert J. Vincze, of Andover, for appellee Todd E. Smiley.

Before LEBEN, P.J., GARDNER, J., and MCANANY, S.J.

PER CURIAM: The individuals involved in this family real estate dispute are Howard L. Peacock, Gayla S. Moeckel, Marcella M. Smiley, Cash Smiley, and Todd E. Smiley. Howard and Gayla are brother and sister. Upon the death of their father, they inherited a tract known as the Marshall Place. Marcella is Gayla's daughter and Howard's niece. Marcella married Todd and they have a son, Cash.

The dispute centers around drafting errors in a contract for a three-way swap of properties between the parties. The dispute came to a head when Marcella and Todd divorced. In the suit that followed, the district court found that Howard and Gayla

1

abandoned their real estate contract with Todd and Marcella in favor of a separate oral agreement. The court then granted Howard and Gayla a life easement across certain land now belonging solely to Todd, as well as the right to farm and irrigate a part of this same land through the 2020 fall harvest.

Howard and Gayla appeal the district court's decision, challenging the evidence that the district court relied on in support of its decision. They also appeal the district court's order denying their request for attorney fees. Although we agree that substantial competent evidence does not support that the parties abandoned their written contract, we hold that the parties entered a separate oral agreement amending their written contract. Under this oral amendment, the parties agreed that Howard and Gayla could irrigate and farm the disputed land for life. We also hold that the district court correctly denied Howard and Gayla's request for attorney fees. Accordingly, we affirm in part, reverse in part, and remand to the district court to grant Howard and Gayla a lease to irrigate and farm the disputed land for life.

*Facts*

The parties are well acquainted with the facts of this case, so we need not recount them in detail. It suffices to say that on November 11, 2011, the parties entered into a contract, which they described as a "land swap." The contract called for three transactions.

● Todd and Marcella would buy the Marshall Place (Tract I) from Howard and Gayla for $210,000.

● Todd and Marcella would convey certain land within their homestead (Tract II) to Howard and Gayla.

2

● Howard and Gayla would convey certain farmland they owned (Tract III), which was adjacent to Todd and Marcella's homestead, to Todd and Marcella's minor son, Cash, reserving life estates in Howard and Gayla.

The contract was prepared by Howard and Gayla's attorney. In describing the land in Tract II and Tract III, the attorney relied on a survey Gayla had obtained on October 10, 2011, in preparation for the land swap. The survey correctly described the land belonging to Howard and Gayla and Todd and Marcella as being in the Northwest 1/4 of Section 23, Township 24 (hereafter Northwest 1/4), and divided it into seven distinct parcels. But sometime shortly after signing the contract, the parties discovered that the contract was facially flawed. Based on the plain language of the contract:

● Todd and Marcella were to deliver to Howard and Gayla a quitclaim deed granting them a life estate to parcels 1, 2, 3, and 4.

● Howard and Gayla were to provide Cash a deed to parcels 4, 5, and 6 subject to their own life estates.

But Todd and Marcella did not own parcel 3, and Howard and Gayla did not own parcels 4, 5, or 6. Moreover, the contract was not supposed to include parcel 2 in the conveyance at all.

Despite these problems, in March 2012, Howard and Gayla conveyed the Marshall Place to Todd and Marcella for $210,000, and Todd and Marcella allowed Howard and Gayla to farm on parcels 1, 5, and 6 beginning in spring 2012. But Todd and Marcella never conveyed a life estate in parcels 1, 5, and 6 to Howard and Gayla. Moreover, Howard and Gayla never conveyed their adjacent farmland to Cash subject to their own life estates.

3

The parties seemed content with this arrangement until Todd and Marcella divorced in September 2014. Under Todd and Marcella's divorce decree, Todd received the homestead located on parcels 1, 2, 4, 5, and 6 while Marcella received the Marshall Place. With Marcella, Gayla's daughter and Howard's niece, no longer having an interest in parcels 1, 2, 4, 5, and 6, the parties' relationship deteriorated and disputes arose. Then, in September 2016, Howard and Gayla filed suit against Todd and Marcella.

Howard and Gayla asked the district court to reform the contract in order to correct the erroneous land descriptions and then to order specific performance, requiring Todd to convey to them life estates in parcels 1, 4, 5, and 6.

Marcella never filed a responsive pleading or appeared in this case; Todd responded that the parties never intended for him and Marcella to convey any portion of parcel 4. He argued that the parties had always intended for him and Marcella to convey a life lease, not a life estate, to the land that was supposed to be listed under Tract II. He asked the court to find that Howard and Gayla had abandoned the contract and that an oral agreement outside of the written contract existed concerning Howard and Gayla's ability to irrigate parcels 1, 5, and 6 in a circle. Finally, he asked the district court to enjoin Howard and Gayla from irrigating in a circle because they had failed to comply with their oral agreement.

Following a bench trial, the district court found that the parties entered into a valid written contract but then abandoned the written contract and entered into a separate oral agreement. The district court granted Howard and Gayla "a life easement across Defendant Todd Smiley's property to allow the irrigation pivot to complete a full circle." Howard and Gayla also received the right to "farm and irrigate" the land within the irrigation circle though the 2020 fall harvest.

Howard's and Gayla's appeal brings the matter to us.

4

*The district court did not rely on inadmissible evidence.*

Howard and Gayla first argue that the district court's decision was based on inadmissible parol evidence. Specifically, they contend that the district court wrongly relied on (1) Todd's testimony that the term life estate meant life lease and (2) Todd's testimony about his conversation with a bank officer. Howard and Gayla also contend that Todd's testimony about his conversation with the bank officer was inadmissible hearsay.

"'When the adequacy of the *legal* basis of a district judge's decision on admission or exclusion of evidence is questioned, we review the decision de novo.'" *City of Mission Hills v. Sexton*, 284 Kan. 414, 430, 160 P.3d 812 (2007). Moreover, we exercise de novo review when considering the district judge's interpretation of a contract, including the district judge's decision on whether a contract is ambiguous. See *Liggatt v. Employers Mut. Casualty Co.*, 273 Kan. 915, 917, 46 P.3d 1120 (2002).

Before trial, Howard and Gayla challenged the admissibility of parol evidence relating to the parties' intent within the written contract. They contend that the admission of parol evidence was improper because their written contract was complete and unambiguous. The district court held that the written contract was unambiguous. Even so, it denied Howard and Gayla's motion because it determined that the parties' arguments hinged on the existence of mutual mistakes, particularly whether the parties were mistaken about the meaning of the terms life estate and life lease.

The court also overruled Howard and Gayla's hearsay objection. The district court admitted Todd's testimony not for the truth of the matter asserted in the bank officer's statements to Todd, but as evidence of Todd's belief that he and Marcella would violate their mortgage agreement should they convey the disputed land to Howard and Gayla.

5

As a result, the following testimony from Todd was admitted into evidence at trial: Todd testified that he had a conversation with a bank officer regarding his mortgage on parcels 1, 2, 4, 5, and 6. According to Todd, the bank officer told him that he could not "convey" his and Marcella's land to Howard and Gayla without violating their mortgage. Todd testified that after speaking with the bank officer, he believed that he and Marcella could grant Howard and Gayla a life lease to the disputed land without violating their mortgage agreement.

Parol evidence is admissible when a party pleads mutual mistake. See *Johnson v. Capitol Federal Savings & Loan Assoc.*, 215 Kan. 286, 292, 524 P.2d 1127 (1974). Here, although the parties attribute different meanings to the terms life estate and life lease, it is undisputed that the parties were both mistaken about the meaning of these terms. During the bench trial, Howard, Gayla, and Todd all testified that they did not understand the difference between the terms life estate and life lease. Howard and Gayla believed that the term life lease had the same effect as a life estate. So did Todd. They all believed that the terms life estate and life lease were equivalent.

What is more, it is readily apparent that Todd's testimony about his conversation with the bank officer involved this mutual mistake. Todd testified that he got the idea of a life lease from the bank officer. As a result, Todd's testimony about his understanding of the term life lease, as well as his testimony about his conversation with the bank officer, constituted admissible parol evidence because the testimony addressed how the parties became mutually mistaken about the terms life estate and life lease.

With respect to Howard and Gayla's hearsay objection, the issue is not whether the bank officer's statement was truthful or what, if anything, distinguishes a life estate from a life lease. The bank officer's statement was offered to show Todd's belief based upon the bank officer's statement that a life lease would not violate his and Marcella's

6

mortgage agreement. The district court admitted Todd's testimony about his conversation with the bank officer because it concerned Todd's belief, not to establish the truth of the bank officer's statements. Todd testified that he told Gayla the details of his conversation with the bank officer. This second recounting of the bank officer's statements was admitted without objection. The district court did not err in admitting Todd's testimony about his conversation with the bank officer.

*The district court made adequate findings of fact and conclusions of law.*

Next, Howard and Gayla contend that because of the inadequacy of the district court's findings of fact and conclusions of law, it is unclear what evidence the district court relied on when deciding that they had abandoned their written contract.

Supreme Court Rule 165(a) (2019 Kan. S. Ct. R. 221) states: "In a contested matter submitted to the court without a jury—and when the court grants a motion for summary judgment—the court must state its findings of fact and conclusions of law in compliance with K.S.A. 60-252." To comply with this rule, the district court's findings must "'be sufficient to resolve the issues, and in addition they should be adequate to advise the parties, as well as the appellate court, of the reasons for the decision and the standards applied by the court which governed its determination and persuaded it to arrive at the decision.'" *Gannon v. State*, 305 Kan. 850, 875, 390 P.3d 461 (2017). The application of K.S.A. 2019 Supp. 60-252 is an issue of law over which we exercise unlimited review. See 305 Kan. at 874.

The district court found that the parties entered into a valid written contract, which they later abandoned in favor of a separate oral agreement. It then determined that under the separate oral agreement, Howard and Gayla had a life lease to irrigate in a circle and "a right" to farm and irrigate the disputed land inside the irrigation circle through the 2020 fall harvest.

7

The court found that the parties partially performed the written contract by conveying the Marshall Place. But it then found that, at some point, Todd learned that he and Marcella would violate their mortgage agreement by conveying a life estate in their land to Howard and Gayla. Moreover, the parties all believed this was true. The parties were aware of the erroneous land descriptions in the written contract. The court found that, as a result, Howard and Gayla "abandoned the contract to aid . . . Marcella" and entered into a separate oral agreement which "attempted to come to some sort of resolution to achieve the intended results" of the written contract. The court cited several facts to support its ultimate finding that the parties abandoned the written contract in favor of a separate oral agreement.

The district court relied on its finding that the parties operated under the assumption that Howard and Gayla had a life lease or life easement to irrigate in a circle to support its ultimate ruling that Howard and Gayla had a life lease to irrigate in a circle. The district court cited the fact that Todd received the right to farm the Marshall Place through the 2020 fall harvest in Todd and Marcella's divorce decree to support its ruling that Howard and Gayla had "a right" to farm and irrigate the disputed land inside the irrigation circle through the 2020 fall harvest. Finally, we can infer that the district court found that the parties intended Howard and Gayla to have farming and irrigation rights over parcels 1, 5, and 6, as well as the disputed parcel 4, because the district court referenced the entirety of the disputed land when making its order.

The district court adequately explained its decision as required by Rule 165(a) in order for us to engage in a meaningful appellate review.

8

*The parties did not abandon their written contract but orally amended it.*

Howard and Gayla argue that substantial competent evidence does not support the district court's finding that they abandoned the written contract and then entered into a separate oral agreement. They contend that the district court should have reformed the erroneous land descriptions within the written contract and ordered specific performance of the written contract as reformed. They also challenge the propriety of the district court's order granting them the right to farm the land within the irrigation circle through the 2020 fall harvest.

Todd simply responds that "[a] deferential review of the record reveals that substantial competent evidence supports the district court's finding that the Contract for Deed was abandoned." Thus, he concludes that we need not consider Howard and Gayla's arguments about reforming the contract and their limited right to irrigate and farm the disputed land through the 2020 fall harvest.

*Standard of Review*

Consideration of Howard and Gayla's arguments require us to apply a bifurcated standard of review. When considering the district court's factual findings, we review those findings for substantial competent evidence. *Gannon v. State*, 298 Kan. 1107, 1175, 319 P.3d 1196 (2014). Factual findings include whether a contract exists and whether an oral agreement modifies a written contract. *W-V Enterprises, Inc. v. Federal Savings &. Loan Ins. Corp.*, 234 Kan. 354, 362, 673 P.2d 1112 (1983); *O'Neill v. Herrington*, 49 Kan. App. 2d 896, 902, 317 P.3d 139 (2014). "'Substantial evidence is such legal and relevant evidence as a reasonable person might accept as sufficient to support a conclusion.'" *Gannon*, 298 Kan. at 1175.

9

When considering the district court's legal conclusions, we exercise unlimited review. 298 Kan. at 1175. This includes the appropriateness of a court's equitable remedy, as well as the court's interpretation of contractual provisions. *Liggatt*, 273 Kan. at 917; *Gonzalez v. Associates Financial Serv. Co. of Kansas*, 266 Kan. 141, 158, 967 P.2d 312 (1998).

*Abandonment*

Howard and Gayla argue that the district court's finding that the parties "operated fairly closely to what the original contract contemplated" is inconsistent with a finding that the parties abandoned the contract. They assert that "their actions were wholly consistent with the written terms of the Contract."

We agree with the district court that the parties did not comply with every provision of the written contract. This is evidenced by Todd and Marcella's failure to convey a life estate to Howard and Gayla in the land that was supposed to be listed in Tract II. It is also evidenced by Howard and Gayla's failure to convey Cash the land that was supposed to be listed in Tract III subject to their own life estates.

That being said, to abandon a contract one party must acquiesce to the acts of the other party that are inconsistent with the continued existence of a contract. *MFA Enterprises, Inc. v. Delange*, 50 Kan. App. 2d 1049, 1054, 336 P.3d 891 (2014). The Tenth Circuit Court of Appeals has held that "where acts and conduct are relied upon to constitute abandonment, they must be positive, unequivocal and inconsistent with an intent to be further bound by the contract." *Sauder v. Dittmar*, 118 F.2d 524, 530 (10th Cir. 1941); see *USD No. 446 v. Sandoval*, 295 Kan. 278, 285-86, 286 P.3d 542 (2012). Indeed, in *Sauder* the appellate court rejected an argument that some behavior inconsistent with the terms of a written contract resulted in abandonment.

In *Sauder*, the parties had a written contract and several supplemental written contracts, which amended the original written contract. Sauder argued that the "modifications and changes in the original contract . . . discharged him of all liability under its terms; and that it had been abandoned as to him." 118 F.2d at 528. The Tenth Circuit rejected Sauder's argument with the following explanation:

> "It is further contended that the original contract was abandoned as to Sauder. It is said that the subsequent agreement modified the former in many respects; that it contained some provisions of the old and added others; that the original contract was thus superseded . . .; and that it was therefore abandoned in its relation to Sauder. It is not contended that plaintiffs and Sauder ever entered into an agreement expressly abandoning the contract as to him or extinguishing his liability under its provisions. Reliance is placed upon acts and conduct to constitute abandonment. . . .

> "[T]he principal provisions were not changed. The changes effected related to provisions and matters which were subordinate and incidental in importance, when considered in connection with the nature and scope of the contract as a whole. . . . The acts and conduct of [plaintiffs] were not clearly inconsistent with the continued existence of the principal provisions of the original contract. And it is plain that abandonment of the contract as to Sauder was not intended or contemplated. There was no effectual or consummated abandonment as to him." 118 F.2d at 530-31.

The evidence necessary to find abandonment identified by the *Sauder* court does not exist here. The district court never found that Howard, Gayla, Todd, or Marcella engaged in acts that positively and unequivocally established that they did not intend to be bound by the written contract. Moreover, it is unclear what acts by Howard, Gayla, Todd, or Marcella could constitute a positive and unequivocal rejection of their written contract. Indeed, as emphasized by Howard and Gayla, the district court explicitly found that following "abandonment of the contract, the parties proceeded generally as if the contract was in effect."

11

Moreover, any actions the parties took that were inconsistent with the written contract involved (1) correcting the errant land descriptions within the written contract and (2) altering the provision requiring Todd and Marcella to give Howard and Gayla a life estate in Tract II to a life lease in Tract II. Those modifications were minor because the modifications did not change the principal goals of the written contract. That is, even with these modifications, the parties did not disturb the three central transactions of the written contract—that Todd and Marcella receive the Marshall Place, that Howard and Gayla receive rights to Tract II, and that Cash receive Tract III. The parties' minor modifications were consistent with the continued existence of the written contract. This case is comparable to *Sauder* in that the parties did not abandon the original written contract when they later entered into contracts that slightly modified the original contract. The district court's finding of abandonment is not supported by substantial competent evidence.

*A Separate Oral Agreement*

We now turn to whether the parties entered into a separate oral agreement which modified the written contract.

Howard and Gayla contend that no evidence supported the existence of an oral agreement outside of the written contract. They particularly take issue with the district court's finding that "[t]he actions of the parties, including new architectural drawings of the property in question, indicate an oral agreement was reached to grant at least an easement on the property to allow the irrigation pivot to complete a full circle."

But at trial, the man who helped make the survey testified that Howard and Gayla asked him to modify the original October 10, 2011 land survey. The new survey was certified on February 2, 2012. Specifically, they asked that in the new survey he not divide the land within the Northwest 1/4 into parcels but still show them how their

12

irrigation equipment could move in a full circle. Thus, there was substantial evidence that Howard and Gayla had two land surveys made and that the later survey included a perpetual pivot path easement.

There is ample evidence that the parties entered a separate oral agreement. First, the parties orally agreed to correct the land description errors within the written contract. Again, Todd testified that shortly after the parties signed the contract, Gayla realized that the contract included erroneous land descriptions. Moreover, the parties farmed and irrigated Tract II in a manner inconsistent with the plain language of the written contract. Yet, until the disputes following Todd and Marcella's divorce, the parties seemingly farmed and irrigated Tract II in a manner consistent with their actual intent. When we consider these facts together, it is readily apparent that the parties orally agreed to amend the written contract to follow their intent regarding the land descriptions because they recognized that the written contract did not reflect their actual intent.

Second, the parties entered a separate oral agreement to modify the provision requiring Todd and Marcella to convey a life estate in Tract II to them. Todd testified that Gayla knew that he and Marcella would default on their mortgage should they actually convey the disputed land to anyone else. Todd also testified that he, Marcella, and Gayla agreed before they signed the contract that he and Marcella would grant a life lease to Howard and Gayla in the disputed land within Tract II. Both Howard and Gayla testified that they wrote the term "life lease" on separate copies of the original land survey.

We recognize that the parties clearly had misunderstandings about the terms life estate and life lease. Yet, by granting Howard and Gayla a life lease to irrigate in a circle, the district court necessarily credited Todd's testimony that the parties believed that he and Marcella would violate their mortgage agreement unless they granted a life lease. As a result, we credit this testimony as well. See *Gannon*, 298 Kan. at 1175-76 (holding that an appellate court must "disregard any conflicting evidence or other inferences that might

13

be drawn from the evidence" when considering the existence of substantial competent evidence). When we consider this fact, as well as the undisputed facts that (1) Howard and Gayla never demanded their life estate by quitclaim deed from Todd and Marcella and (2) Howard and Gayla wrote the term "life lease" on separate copies of the original land survey, we conclude that there was substantial competent evidence that the parties entered into a separate oral agreement amending the term "life estate" to "life lease" in the written contract.

The evidence supports a finding that the parties entered a later oral agreement that amended the written contract in two ways: (1) to correct the erroneous Tract II land description to reflect the parties' actual intent, and (2) to amend the clause requiring Todd and Marcella to convey a life estate in Tract II, so that Todd and Marcella need only grant Howard and Gayla a life lease in Tract II. Because of this amendment to the original contract, the district court correctly rejected Howard and Gayla's request that it reform the original contract and order specific performance of the reformed contract.

*The district court erred in finding that Howard and Gayla had a right to farm and irrigate the land within the irrigation circle only through the 2020 fall harvest.*

For their penultimate issue, Howard and Gayla contend that the district court wrongly limited their right to farm the land within the irrigation circle through the 2020 fall harvest. Because the district court's order conflicts with its factfindings, we agree.

The district court granted Howard and Gayla "the right to farm or irrigate the property . . . for the same period of time Defendant Todd Smiley is allowed to farm the Marshall Place pursuant to the terms of the divorce." This resulted in Howard and Gayla having a right to farm and irrigate the land within the irrigation circle through the 2020 fall harvest.

14

But Howard and Gayla have always argued that they had a life estate in the land that was supposed to be in Tract II. Meanwhile, Todd has always argued that Howard and Gayla had a life lease in the land that was supposed to be in Tract II. Thus, the parties take the consistent position that Howard and Gayla had some form of *lifelong rights* to the land that was supposed to be included in Tract II. In fact, before giving Howard and Gayla a life lease to irrigate in a circle, the district court found that the parties acted as if Howard and Gayla had "either a life lease or easement."

The district court's decision to limit Howard and Gayla's right to farm and irrigate the disputed land in Tract II through the fall harvest 2020 is unsupported. Accordingly, we reverse and remand to the district court to grant Howard and Gayla a life lease to farm and irrigate the disputed land in parcels 1, 4, 5, and 6.

*Howard and Gayla are not entitled to attorney fees.*

Finally, Howard and Gayla contend that the district court erred by denying their attorney fees request. We examine the district court's decision to deny attorney fees for any abuse of its discretion. *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 81, 350 P.3d 1071 (2015).

Howard and Gayla argue that the district court erred because their contract states that a party suing for breach of contract may recover attorney fees from the breaching party. But in making this argument, Howard and Gayla ignore the fact that they too breached the contract. In its order, the district court found that Howard and Gayla did not comply with the plain language of the written contract, which required them to convey their land to Cash subject to their own life estates. Although the district court did not explicitly say so, it clearly found that Howard and Gayla failed to comply with the plain language of the written contract. Because Howard and Gayla also violated the plain

15

language of the written contract, the district court did not abuse its discretion in denying Howard and Gayla's request for attorney fees.

Affirmed in part, reversed in part, and remanded with directions.