NOT DESIGNATED FOR PUBLICATION

No. 126,854

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JULIE A. SYLVESTER,
*Appellant*,

v.

TIMOTHY KLEIN and NORENE K. KLEIN,
*Appellees*.

MEMORANDUM OPINION

Appeal from Wabaunsee District Court; JEFFREY R. ELDER, judge. Oral argument held October 15, 2024. Opinion filed December 13, 2024. Affirmed.

*Rebecca R. Rookstool*, of Westmoreland, for appellant.

*Doug Thompson*, of Chapman, for appellees.

Before COBLE, P.J., GARDNER, J., and CARL FOLSOM III, District Judge, assigned.

PER CURIAM: Julie A. Sylvester appeals the district court's denial of her claim of adverse possession for certain cropland that she farmed with her now-deceased husband, Eldon Sylvester, for more than 15 years. After a trial, the district court found that Julie failed to prove the claim of adverse possession by clear and convincing evidence because Julie's possession was not knowingly adverse to the owners, and Julie's subjective belief that she owned the property was not reasonable under the facts of the case. Julie also advances a claim of trespass, which depends on the outcome of the adverse-possession claim. Finding no error in the district court's decision, we affirm.

1

In 1993, Julie and Eldon Sylvester purchased agricultural land in Wabaunsee County from Irene Thoes (an individual) and the Elwin E. Thoes Testamentary Trust. The purchase was not intended to include an enclosed five-acre tract with a farmhouse. That tract was separately deeded by Irene and the Thoes trust to Nola and Elgene Sylvester—Eldon's parents. Julie and Eldon also signed a quitclaim deed, making clear that Nola and Elgene owned the five acres and the farmhouse. Both deeds were recorded on the same date in 1993. The five-acre tract included about three acres of cropland, which surrounded the house and was separated from the house's curtilage by a fence. This cropland within the five-acre tract is the subject of this case.

Julie and Eldon farmed their adjoining property, as well as Nola and Elgene's approximately three acres of cropland, for 28 years. In November 2021, the farmhouse and all five acres were willed to Eldon's sister Norene Klein and her husband Timothy Klein. The Kleins had the five-acre tract surveyed and then started to build a new fence and barn on the land that they inherited. The present lawsuit followed.

Julie filed a petition to quiet title for the approximately three acres of cropland that had previously belonged to Nola and Elgene. As an exhibit attached to the petition, Julie drew boundary lines for these tracts on an ariel-view map into three sections labeled "A," "B," and "C." These sections included Julie's tract (A), the Kleins' tract (B), and the disputed tract (C). Julie also drew a line on the map to show the fence "D" that divided tracts B and C. The following image is the ariel-view map that was included with the petition.



Volume 1 Page 8

Julie's petition acknowledged that Irene and the Thoes trust deeded tract C to Nola and Elgene in 1993. But Julie alleged that she was now the rightful owner of tract C through adverse possession. The petition stated that Julie had been openly using and possessing tract C—by farming the land, maintaining the land, and performing upkeep on the land—since the early 1990s. Thus, she now owned tract C. So in 2021, the Kleins inherited only tract B and thus committed trespasses on her property, including the removal of fence D.

The Kleins explained that Nola and Elgene were also Norene's parents, and they inherited tracts B and C from Nola and Elgene's trust in 2021. Like Julie, the Kleins referenced the deed issued to Nola and Elgene by Irene and the Thoes trust in 1993. The

3

Kleins also alleged that Julie and Eldon issued Nola and Elgene a quitclaim deed to properties B and C in 1993. They claimed that Nola and Elgene held title to these properties until 2009, when they transferred the deed to the Elgene D. Sylvester and Nola Sylvester Revocable Living Trust.

The Kleins further alleged that Julie and Eldon's farming of tract C did not establish adverse possession because Nola and Elgene gave Eldon permission to farm their land as part of a family-farm operation. The Kleins stated that Julie and Eldon had conducted "rental farming" on tract C. And after the Kleins inherited the land, they told Julie to stop farming it. They also denied Julie's trespass allegations and accused Julie of trespassing on their property. The Kleins requested payment for Julie's use of the property to graze cattle and farm crops on tract C. Regarding fence D, the Kleins claimed that they had to remove the fence because it was unsafe for children and could not contain livestock.

*Bench Trial*

This matter was tried to the district court. Julie testified that in 1993, she and Eldon entered a contract with Irene and the Thoes trust to buy a one-half interest in several acres of land, which included tracts A, B, and C. Julie acknowledged that when she and Eldon made this purchase, they also agreed to deed their interest in a small portion of the property to Nola and Elgene. The description of the property listed on the quitclaim deed included tracts B and C. However, Julie testified that she did not understand the property description and thought that she agreed to transfer title to tract B only. Thus, since 1993, Julie believed that she and Eldon owned the disputed property— tract C.

Julie testified that someone built the fence (D) between tracts B and C before she and Eldon purchased the land. Other testimony suggested the fence was built in the 1970s

4

or 1980s. Julie believed that this fence marked the boundary line between her property and Nola and Elgene's property.

Julie also testified and presented evidence that she and Eldon openly, exclusively, and continuously possessed tract C since 1993. Specifically, Julie and Eldon farmed tract C, paid all the bills related to the crops grown on tract C, and kept all the proceeds from the sale of crops on tract C. Julie presented supportive records from the Farm Service Agency, records from the United States Department of Agriculture, and reports related to the sale of crops at the co-op. Julie also presented the testimony of an irrigation specialist, George Michaels, who explained that Julie owned and used an irrigation pivot that was anchored on tract A, but which circled and watered tract C. Michaels testified that he worked on this pivot, and during his time working for Julie, he believed she owned both tracts A and C.

During her testimony, Julie admitted that Elgene sometimes helped Eldon farm their land, although not tract C specifically. Julie also testified that the Kleins owned and farmed other properties for themselves. Eldon sometimes helped Elgene with those properties as well, and Elgene and Eldon sometimes shared farm equipment. Still, Julie maintained that there was not a shared, family-farm operation. She insisted that the families helped each other out, but did not agree to share the properties or income. She testified that only she and Eldon owned tract C.

Eldon and Julie's son, Ethan Sylvester, also testified. Ethan explained that throughout his childhood, he worked on his family's land and always believed that tract C belonged to his parents. He explained that he and his parents grew crops and grazed cattle on tract C. Ethan also explained that the irrigation pivot watered almost all the land on tract C. Ethan did not believe Elgene owned tract C or the pivots that watered it, in part because Elgene never cut the crops or otherwise farmed the land on tract C.

To the contrary, the Kleins presented a 1993 survey of the land and testimony from the surveyor, Terry Force. They also presented a January 2022 boundary-line retracement through the testimony of Timothy Sloan, who conducted the retracement. Sloan testified that he researched the property before completing the retracement and found a set of plans from the Kansas Department of Transportation. These plans provided information about the names of the previous owners of tract C and the adjoining tracts and the "over spray" of an existing irrigation that affected tract C.

Kyle Mead, an attorney for Lawyers Title of Kansas, also testified about ownership research he performed on tract C. Mead discussed the deeds in which Irene and the Thoes trust and Julie and Eldon transferred tract C to Nola and Elgene. Both deeds were recorded on the same day in 1993. Mead also testified that Nola and Elgene quitclaimed their interest in the property in 2009, 16 years after they received it, to their revocable living trust. Mead also found a survey of the property from 2014. Finally, he found a trustee's deed executed by Nola and Norene, as co-successor trustees of the Elgene D. Sylvester and Nola Sylvester Revocable Living Trust, which transferred the property to the Kleins in 2021. Mead did not find any document that showed Julie ever had a recorded title for a property interest in tract C.

Timothy presented the final testimony for the Kleins. He explained that he married Norene in 1984 and purchased a property near Nola and Elgene's house. Timothy also farmed with Elgene and Eldon around this time. They, however, moved away for several years. Timothy also claimed that Nola and Elgene gave Eldon permission to farm the property because it was a "family farm." To support their argument about the true ownership of the disputed property, the Kleins introduced the record of deeds discussed above. Timothy testified that the record also showed that in 2005, the trustee of the Thoes trust issued a warranty deed to Eldon for property "less the five acres" already deeded to Nola and Elgene.

Timothy also testified that after he and Norene inherited their property, they emailed Julie's lawyer, requesting Julie move her pivot off tract C. He also took the existing fence down because it was in disrepair. He later obtained a building permit for a new fence. He also secured a permit to build a shop office on tract C. He started construction on the shop and poured a concrete slab. Julie then reported the Kleins to the sheriff's department for trespassing. The Kleins later received Julie's petition initiating this lawsuit, so they stopped building pending resolution of this case.

*District Court's Decision*

The district court denied each of the claims Julie raised in her petition. In deciding Julie's adverse-possession claim, the court made a finding that she failed to prove the elements of the claim under K.S.A. 60-503. On whether Julie and Eldon's possession was "knowingly adverse" to Eldon's parents'—the court considered cases from other jurisdictions regarding the dynamics of family farms. Ultimately, the district court denied Julie's claim under both a belief-of-ownership theory and a knowingly adverse theory of adverse possession. The district court found that Julie had a subjective belief of ownership, but it held the belief was unreasonable based on the quitclaim deed that she and Eldon conveyed to Nola and Elgene in 1993:

> "Julie's assertion that she believed in good faith . . . that the fence line identified on her Exhibit 1, was the border of her property from defendants. Yet, the exhibit itself claims the fence was built in 1994. Given the Quitclaim deed she and her husband executed in 1993, where the real estate at issue is clearly identified, her claim must fail. While she may have had a subjective belief that it was she and her husband's property, in light of the quitclaim deed being executed, clearly transferring any interest they had in the real estate makes such a belief unreasonable."

7

The district court also determined that Julie and Eldon's possession of the property was never knowingly adverse because the circumstances suggested that Nola and Elgene likely permitted them to use the property:

> "In addition, the Court cannot find that she and her husband's possession of the real estate was knowingly adverse to Elgene and Nora. Given the circumstances, most importantly the parent/child relationship between the parties, it could just have easily been a permissive use of the real estate from father to son and his wife. It was not proven to be clear and convincing to the contrary."

Julie timely appealed to this court.

ANALYSIS

*Standard of Review and Basic Legal Principles*

The doctrine of adverse possession allows a party to take lawful title to the property of another under certain circumstances. To establish title by adverse possession, a party must have: "(1) possessed the property for a period of 15 year in a manner (2) that is (a) open, (b) exclusive, *and* (c) continuous; and (3) that is either (a) under a claim knowingly adverse *or* (b) under a belief of ownership." *Ruhland v. Elliott*, 302 Kan. 405, Syl. ¶ 5, 353 P.3d 1124 (2015) (citing K.S.A. 60-503).

The party claiming ownership through adverse possession must prove each element to the fact-finder by clear and convincing evidence. *Crone v. Nuss*, 46 Kan. App. 2d 436, 442, 263 P.3d 809 (2011). And "'[e]very presumption is in subordination to the rightful owner.'" *Ruhland*, 302 Kan. at 411 (quoting *Boese v. Crane*, 182 Kan. 777, 782, 324 P.2d 188 [1958]). The law will not allow the property of one person to be taken by another upon slight presumptions or probabilities. *Stith v. Williams*, 227 Kan. 32, 36, 605 P.2d 86 (1980).

8

Whether a party has acquired title by adverse possession is a question of fact to be determined by the trier of fact—here, the district court. *Ruhland*, 302 Kan. at 409. Generally, this court reviews factual findings of the district court for substantial competent evidence. 302 Kan. at 409-10. But the district court's conclusion that Julie failed to establish the elements for adverse possession was a negative factual finding. Thus, we can reverse only if the district court made its decision by arbitrarily disregarding undisputed evidence or relying on an extrinsic consideration like bias, passion, or prejudice. See *MFA Enterprises, Inc. v. Delange*, 50 Kan. App. 2d 1049, 1056, 336 P.3d 891 (2014).

*The district court did not err in denying Julie Sylvester's claim of adverse possession.*

The district court's decision rested on two negative findings of fact: (1) Julie's possession of the roughly three acres of cropland in tract C was not "knowingly adverse" to the owners; and (2) Julie's belief in ownership in tract C was not reasonable under the circumstances of this case. Accordingly, this court reviews these two major findings to determine whether the district court arbitrarily disregarded undisputed evidence or relied on an extrinsic consideration like bias, passion, or prejudice. See 50 Kan. App. 2d at 1056. We find no such error.

Julie does not claim that she adversely possessed tract C in a way that was "knowingly adverse" to the titled owners. See *Ruhland*, 302 Kan. at 412 ("If a party seeks to establish adverse possession by showing 15 years of continuous, exclusive, and open possession 'under a claim knowingly adverse,' that party must show his or her possession was 'hostile' to the claim of the true owner."). Thus, we need not review the district court's decision on this point. Rather, Julie claims that she adversely possessed the land under a good-faith belief that she owned tract C, and that she openly, exclusively, and

9

continuously possessed the property since 1993. She also claims that the district court erred by finding that her belief of ownership was unreasonable.

To prevail under the belief-of-ownership claim of adverse possession, a person's belief of the ownership must be reasonable and in good faith under the circumstances. *Wallace v. Magie*, 214 Kan. 481, Syl. ¶ 4, 522 P.2d 989 (1974); *Akers v. Allaire*, 17 Kan. App. 2d 556, 558, 840 P.2d 547 (1992).

"The good faith belief requirement has been defined as a state of mind which is based on good faith under circumstances which justify such belief. The belief must be reasonable." *Buchanan v. Rediger*, 26 Kan. App. 2d 59, 67, 975 P.2d 1235 (1999). The belief thus entails both subjective and objective components. See *Armstrong v. Bromley Quarry & Asphalt, Inc.*, 305 Kan. 16, 39-40, 378 P.3d 1090 (2016) (good-faith trespasser must believe in superiority of his or her right to enter upon land, and there must be adequate support for the belief); *Sowder v. Lawrence*, 129 Kan. 135, 138, 281 P. 921 (1929) ("Good faith is like honest intent.").

On this issue, the district court did not arbitrarily disregard undisputed evidence or rely on an extrinsic consideration like bias, passion, or prejudice. In fact, substantial competent evidence supported the district court's holding. And as an appellate court, we do not reweigh evidence or determine the credibility of witnesses. *Peterson v. Ferrell*, 302 Kan. 99, 106-07, 349 P.3d 1269 (2015).

The district court's holding was supported by evidence of a 1993 survey of the land, as well as testimony from the surveyor. The evidence also included the 1993 quitclaim deed, which was signed and recorded, wherein Julie and Eldon transferred any interest they had in tracts B and C to Nola and Elgene. Although Julie testified that she had a good-faith belief that she owned tract C because of the existence of the fence (D), the district court found this to be unreasonable in light of the quitclaim deed. We do not

10

reweigh the district court's factual findings on this issue. And we cannot conclude that the district court arbitrarily disregarded undisputed evidence or relied on an extrinsic consideration like bias, passion, or prejudice.

Although the trial included evidence that would support Julie's adverse-possession claim, the district court made a valid negative factual finding against Julie, and we do not second guess the district court on this point. Because Julie's remaining trespass claim relied on her success on her claim of adverse possession, she cannot prevail on either. Thus, for all these reasons, the district court did not err.

Affirmed.